



1  Michael W. Sobol (State Bar No. 194857)
   *msobol@lchb.com*
2  Roger N. Heller (State Bar No. 215348)
   *rheller@lchb.com*
3  Allison Elgart (State Bar No. 241901)
   *aelgart@lchb.com*
4  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
6  Facsimile:  (415) 956-1008

7  *Attorneys for Plaintiff*

8

9

10                       UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA
                              SAN JOSE DIVISION
12

13  ADAM WEISBLATT, individually and on        Case No. CV 10-02553
    behalf of all others similarly situated,
14                                             **CLASS ACTION COMPLAINT**
                        Plaintiff,
15                                             **DEMAND FOR JURY TRIAL**
    v.
16
    APPLE INC., AT&T INC., AT&T
17  MOBILITY LLC, and Does 1-10,

18                      Defendants.

19

20          Upon personal knowledge as to his own acts and status, and based upon his

21  investigation, his counsel's investigation and information and belief as to all other matters,

22  Plaintiff Adam Weisblatt ("Plaintiff"), on behalf of himself and all others similarly situated,

23  alleges as follows:

24                         **NATURE OF THE ACTION**

25          1.      This is a class action brought on behalf of purchasers of the Apple 3G-enabled

26  iPad.  An iPad is a wireless computer product used for downloading and storing large amounts of

27  multi-media data and applications, viewing and listening to video, movies, and music, as well as

28  sending and receiving email.  The wireless service plans for iPads are provided, and billed, on a

1    monthly basis according to the amount of data used, or downloaded, by the customer.  Apple and

2    AT&T sold the 3G-enabled iPads with promises that "unlimited data" service plans would always

3    be available at the customers' option.

4         2.    As of June 7, 2010, Apple and AT&T discontinued providing the "unlimited data"

5    plan they promised in connection with their sales of the 3G-enabled iPads.  Apple and AT&T had

6    promised consumers flexibility with their data plans, allowing them the ability to freely switch

7    back and forth between the limited data plan, the unlimited data plan, and no 3G data plan, based

8    on their data needs.  The iPad purchasers who initially opted for the limited data plan or no 3G

9    data plan have been stripped of their ability to later opt for the unlimited data plan, and even those

10   customers currently signed up for the unlimited data plan cannot switch to a limited plan or no 3G

11   data plan and then later opt for the unlimited plan again, as was originally promised.  Apple and

12   AT&T announced this policy change within just weeks after selling hundreds of thousands of 3G-

13   enabled iPads upon the product's initial launch.

14        3.    The availability of an unlimited 3G data plan, and, in particular, the option to

15   switch in and out of an unlimited data plan, motivated Plaintiff and other customers to purchase

16   iPads with 3G capability, which cost customers approximately $130 more (before tax) than an

17   equivalent iPad without 3G capability.  An unlimited data plan is attractive to customers who

18   wish to download movies and other data-intensive applications and content on their iPads at a

19   reasonable fixed monthly cost.  Having the option to switch in an out of the unlimited data plan is

20   attractive to customers because it allows them access to unlimited data when they need it (such as

21   when they go on vacation and want to use their iPads to download movies and other data-

22   intensive content) and also allows them to not pay for unlimited data when they do not need it.

23   Defendants' ubiquitous marketing of the unlimited data plan and the option for customers to turn

24   such plan on and off based on their data needs, on their respective websites and elsewhere,

25   reflects Defendants' awareness that these options were highly important to customers' purchase

26   decisions.

27        4.    Plaintiff and the Class seek damages, restitution, and injunctive relief for

28   Defendants' ubiquitous false representations, on their respective websites and elsewhere, that

- 2 -                         CLASS ACTION COMPLAINT
                             CASE NO. _____

1  customers who purchase iPads with 3G capability would be able to freely switch in and out of an

2  unlimited 3G data plan each month as their data needs demanded.

3  ## JURISDICTION AND VENUE

4  5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because

5  the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and there is

6  minimal diversity because numerous members of the Class are citizens of different states than

7  Defendants.

8  6.  This Court has personal jurisdiction over Defendants because Apple is

9  headquartered in, and is incorporated in, California; a substantial portion of the wrongdoing

10  alleged in this Complaint took place in California; Defendants are authorized to do business in

11  California; Defendants have sufficient minimum contacts with California and/or Defendants

12  otherwise intentionally avail themselves of the markets in California through the promotion,

13  marketing and sale of their products and services in California to render the exercise of

14  jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15  7.  Venue is proper under 28 U.S.C. § 1391(a) because Apple has its headquarters in

16  this District and is incorporated in this District, and because a substantial part of the events or

17  omissions giving rise to Plaintiffs' claims occurred in this District.

18  8.  **Intradistrict Assignment**:  Pursuant to Northern District of California Civil Local

19  Rules 3-2 and 3-5, assignment to the San Jose Division of the Northern District of California is

20  appropriate.  Defendant Apple Inc. is headquartered in Santa Clara County, and thus a substantial

21  part of the events or omissions which give rise to the claims occurred in Santa Clara County.

22  ## PARTIES

23  9.  Plaintiff Adam Weisblatt is a citizen of, and resides in, Fulton, New York.

24  10.  Defendant Apple Inc. ("Apple") is a California corporation with its headquarters in

25  Cupertino, California.

26  11.  Apple is a multi-national corporation that designs and markets computer software,

27  personal computers, and consumer electronics, including mobile devices such as the iPhone and

28

- 3 -

1    iPad.  By revenue, Apple is the largest mobile device company in the world.  Apple markets and

2    sells its products and services directly to its customers in stores and online.

3          12.    Defendant AT&T Inc. is a Delaware corporation with its headquarters in Dallas,

4    Texas.

5          13.    Defendant AT&T Mobility LLC is a wholly-owned subsidiary of AT&T Inc., with

6    its headquarters in Atlanta, Georgia.

7          14.    AT&T Inc. and AT&T Mobility LLC are collectively referred to herein as

8    "AT&T."  Apple and AT&T are collectively referred to herein as "Defendants."

9          15.    AT&T provides telecommunication products and services to consumers,

10   businesses, and other telecommunication service providers under the AT&T brand worldwide.

11   AT&T Mobility LLC began operations in October 2000, and in 2004 acquired AT&T Wireless

12   Services, Inc.  Upon AT&T Inc.'s acquisition of BellSouth in 2006, AT&T Mobility became a

13   wholly-owned subsidiary of AT&T Inc.  By revenue, AT&T is the largest wireless carrier and is

14   the second largest provider of mobile telephony service in the United States, with over 85.1

15   million wireless customers and more than 150 million total customers.

16         16.    Through an agreement with Apple, AT&T is, and at all relevant times has been,

17   the exclusive provider of wireless service for all iPads.  On information and belief, Apple receives

18   substantial consideration from AT&T in exchange for allowing AT&T to be the exclusive

19   provider of wireless service for all iPads.

20                  **ALLEGATIONS  APPLICABLE  TO  ALL  COUNTS**

21         17.    On or around April 30, 2010, Defendants began offering iPads with exclusive

22   AT&T 3G service.  Apple advertised the "No-contract, 3G service," telling customers that "[i]n

23   the U.S., 3G service is available from AT&T.  You can choose from breakthrough data plans – no

24   long-term contract required."  *See* Exhibit A, attached hereto.  AT&T likewise advertised the 3G-

25   capable versions of the iPad, and consumers could follow a link on AT&T's website to purchase

26   3G-capable iPads.  *See* Exhibit B, attached hereto.  The iPads with 3G capability cost customers

27   approximately $130 more (before tax) than the equivalent iPad models without 3G capability.

28   *See* Exhibit A, attached hereto

- 4 -

18.     Since its launch, Defendants have sold over 2 million iPads. (*See* http://cbs5.com/local/iPad.Apple.sales.2.1724762.html).  On information and belief, a substantial portion of the iPads that Defendants have sold have been iPads with 3G capability.

19.     From April 30, 2010 until June 7, 2010, Defendants offered prospective purchasers of 3G-capable iPads two 3G data plans: (a) 250 MB of data for $14.99 per month, with additional data available in 250 MB increments for an added charge; or (b) unlimited data for $29.99 per month. *See* Exhibits A-C, attached hereto.

20.     Defendants represented that whether or not customers initially signed up for the unlimited data plan, they would continue to have the option to "upgrade" to the unlimited data plan, and to switch in and out of the unlimited data plan, as their monthly needs demanded.

21.     Customers who purchased 3G-capable iPads were not required to chose a single 3G data plan to apply to their service for any longer than a one month period.  Rather, Defendants consistently advertised that customers would be able to sign up for, and change, their data plans each month as their data needs demanded, and, specifically, that they would be able to "upgrade to" or "switch" in and out of the unlimited data plan on a monthly basis in the future as their data needs demanded.

22.     Defendants expressly promised their customers that if they purchased a 3G-capable iPad, they could later upgrade to the unlimited data plan and could switch in and out of the unlimited data plan as their data needs demanded.   For example, Apple advertised to iPad 3G customers:

a.     "**No-contract 3G service.** In the United States, 3G service is available through a breakthrough deal with AT&T. *You choose the amount of data per month you want to buy — 250MB or unlimited.* If you choose the 250MB plan, you'll receive onscreen messages as you get close to your monthly data limit so *you can decide whether to turn off 3G or upgrade to the unlimited plan.* Best of all, there's no long-term contract. *So if you have a business trip or vacation approaching, just sign up for the month you'll be traveling and cancel when you get back.* You don't need to visit a store to get 3G service. You can sign up, check your

- 5 -

1   data usage, manage your account, or cancel your service — all from your iPad." Exhibit C,

2   attached hereto (emphasis added).

3              b.     **"Manage your data plan**. iPad makes it easy to choose the data

4   plan that works best for you. *When you need more data, you can add another 250MB or upgrade*

5   *to the Unlimited Data plan.* Because you sign up for a data plan in monthly increments, you can

6   cancel your plan at any time and then sign up again whenever you need 3G service." Exhibit C,

7   attached hereto (emphasis added).

8              c.     "[Y]ou can monitor your data usage and change your plan at any

9   time, including switching to unlimited data or cancelling 3G service if you know you won't need

10  it." Exhibit A, attached hereto.

11             d.     "As you get close to your monthly data limit, you'll receive

12  onscreen messages to help you decide whether to upgrade to another 250MB or switch to the

13  unlimited plan." Exhibit A, attached hereto.

14             e.     "There are two monthly data plans:  250MB or unlimited.  There's

15  no contract, and you can sign up and change your service right on your iPad." Exhibit A,

16  attached hereto.

17      23.    Likewise, AT&T advertised: "AT&T offers two data plan options – 250MB or

18  unlimited data, with recurring monthly charge and no long-term contract.  To help you manage

19  your data with a 250 MB plan, iPad will notify you at 20%, 10%, and when there's no more data

20  available, so you can decide if you want to add more data or upgrade to an unlimited data plan."

21  Exhibit B, attached hereto.

22      24.    An unlimited 3G data plan is material to iPad customers, because customers can

23  use the iPad to, among other things, download data-intensive applications and content, such as

24  full-length movies.  On information and belief, for example, under a $14.99 per month, 250 MB

25  plan, a consumer could download a little over 2 hours of video content per month before incurring

26  overage charges, whereas under the $29.99 per month unlimited data plan, a consumer could

27  finish a 3 hour movie, and download unlimited other movies and content, without incurring any

28  overage charges.

CLASS ACTION COMPLAINT
CASE NO. _____

25.     Having the option to turn the unlimited data plan on and off is material to customers because it allows them access to unlimited data, at a reasonable flat cost, when they need it (such as when they are going on vacation, and want to use their iPads to download full-length movies), while at the same time allowing them to not pay for unlimited data when they do not need it.

26.     Defendants marketed and advertised the unlimited data plan and the ability to switch in and out of the unlimited data plan to induce consumers to purchase iPads with 3G capability.  The iPads with 3G capability cost significantly more than the equivalent iPads without 3G capability, but they were seen as worth the added cost by consumers who wanted the flexibility and option of getting unlimited data for a fixed cost when they needed it.

27.     Defendants' representations regarding the continued availability of unlimited data service plans were material to customers' decisions to purchase iPads with 3G capability, Defendants intended that customers rely on those representations, and Plaintiff and the Class did rely on those misrepresentations in making their purchase decisions.

28.     Defendants' representations regarding the continued availability of unlimited data service plans for purchasers of iPads with 3G capability were false, and Defendants knew or should have known that those representations were false.

29.     On or around June 2, 2010, Defendants announced that as of June 7, 2010, they would no longer offer an unlimited 3G data plan for iPad customers.  Pursuant to this change, customers can no longer choose to pay a fixed monthly rate for unlimited 3G data, but rather are required to choose between other, limited data plans.  *See* Exhibit D, attached hereto (Press Release).

30.     On information and belief, after June 7, 2010, customers who purchased iPads with 3G capability before June 7, 2010 can only obtain the unlimited data plan if they were already signed up for it as of June 7, 2010.  Moreover, if those customers *ever* discontinue subscribing to the unlimited data plan (*e.g.,* by changing to a different plan or choosing to have no 3G plan for a particular month), they cannot switch back to the unlimited data plan.  In other words, even though Defendants widely trumpeted to customers the availability of the unlimited

CLASS ACTION COMPLAINT
CASE NO. _____

1    3G data plan and, specifically, that customers would be able to switch in an out of the unlimited

2    data plan in the future as their data needs demanded, those customers who did not initially sign up

3    for the unlimited data plan will *never* have the option of "switching" or "upgrading" to the

4    unlimited data plan in the future, as was promised. Likewise, those customers who did initially

5    sign up for the unlimited data plan have lost the ability to switch in and out of the unlimited data

6    plan, as was promised.

7         31.    Defendants unilaterally withdrew the unlimited data plan option only just over a

8    month after they started selling iPads with 3G capability. Defendants stripped Plaintiff and the

9    Class of one of the key promised benefits of purchasing a 3G-capable iPad in some cases just

10    days (and, at most, about a month) after they purchased their iPads in reliance on Defendants'

11    misrepresentations.

12        32.    Defendants' unilateral withdrawal of the unlimited data plan option was timed just

13    a few days after the 30-day return deadline expired for the substantial number of customers,

14    including Plaintiff, who bought 3G-capable iPads during the initial rush when the product was

15    first launched. *See, e.g.*, http://news.ycombinator.com/item?id=1397702.

16        33.    Defendants' misrepresentations continued right up to the day they withdrew the

17    unlimited data plan option. As of at least June 5, 2010—three days after Defendants announced

18    the June 7, 2010 change and just two days before the change was scheduled to take effect (*see*

19    Exhibit D, attached hereto)—Apple continued to falsely advertise on its website that purchasers

20    of 3G-capable iPads would be able to "upgrade" to the unlimited data plan, and switch in and out

21    of the unlimited data plan, in the future. *See* Exhibit E, attached hereto. As of at least June 5,

22    2010, AT&T also continued to advertise this option despite the pending change that rendered the

23    representation completely false. *See* Exhibit F, attached hereto.

24        34.    Even after the June 7, 2010 change took effect, Apple's website continued to

25    misrepresent to customers that the unlimited data plan was available for 3G-capable iPads and

26    that customers would be able to upgrade in the future to the unlimited data plan, and switch in and

27    out of the unlimited data plan, as their data needs demanded. *See* Exhibit G, attached hereto.

28

CLASS ACTION COMPLAINT
CASE NO. _____

1    35.    By their conduct, Defendants have been unjustly enriched and have damaged

2    Plaintiff and the Class.

3                        **PLAINTIFF ADAM WEISBLATT**

4    36.    On April 8, 2010, Plaintiff Adam Weisblatt purchased a WiFi (non-3G-capable)

5    iPad for a total purchase price of $538.92, including tax.  On April 30, 2010, Mr. Weisblatt

6    returned that iPad and paid an additional $140.40 ($130 plus the additional tax) in exchange for

7    the equivalent model iPad with 3G capability.  Both his original April 8, 2010 purchase and the

8    April 30, 2010 exchange/purchase were made at an Apple store in Syracuse, New York.

9    37.    Before purchasing his 3G-capable iPad, Mr. Weisblatt saw representations, on

10   Apple's website and in various industry publications (which, on information and belief, were

11   based on Defendants' statements), regarding the iPad with 3G capability, which at the time was

12   scheduled to be released shortly.  In particular, Mr. Weisblatt saw representations that: (a) one of

13   the available data plans for the 3G-capable iPad would be unlimited 3G data downloading for a

14   fixed monthly rate; and (b) if he purchased a 3G-capable iPad, he would be able to switch in and

15   out of the unlimited 3G data plan in the future as his monthly data needs demanded.

16   38.    Similarly, on April 30, 2010, the day that Mr. Weisblatt purchased his 3G-capable

17   iPad, customer service representatives at the Apple store where he made the purchase represented

18   to Mr. Weisblatt that if he purchased a 3G-capable iPad: (a) one of his data plan options would be

19   an unlimited 3G data plan for a fixed monthly rate; and (b) he would be able to switch in and out

20   of the unlimited 3G data plan in the future as his monthly data needs demanded.

21   39.    Based on these representations, Mr. Weisblatt decided to exchange his WiFi (non-

22   3G-capable) iPad and pay an extra $140.40 (with tax) for a 3G-capable iPad.  Mr. Weisblatt

23   decided that the 3G-capable iPad was worth the additional cost because, in some months,

24   unlimited 3G access would allow him to work outside of the office for several hours a week that

25   he otherwise would have to spend in the office, and allow him access to data-intensive content

26   when he is away from home.

27   40.    When he purchased his 3G-capable iPad, Mr. Weisblatt signed up for the

28   unlimited 3G data plan, and he was signed up for the unlimited data plan as of June 7, 2010.

- 9 -

1   However, due to variances in his work and life schedules, there are several months each year

2   where an unlimited 3G data plan would not benefit Mr. Weisblatt. Thus, Mr. Weisblatt

3   anticipated using the unlimited data plan in some months and not in others. The appeal to Mr.

4   Weisblatt of the 3G-capable iPad was that, according to Defendants' representations, unlimited

5   3G data would be available to him for the months that he needed it, but he was not required to pay

6   for unlimited data in the months that he didn't need it.

7          41.     As a result of Defendants' June 7, 2010 policy change, Mr. Weisblatt no longer

8   has the option to switch in and out of the unlimited 3G data plan, as he was promised.

9          42.     Had he known that his access to the unlimited 3G data plan option would be

10  restricted in the way it has been pursuant to the June 7, 2010 change (*i.e.*, that he would not be

11  allowed to switch in and out of the unlimited data plan based on his needs), Mr. Weisblatt would

12  not have purchased the iPad with 3G capability.

13         43.     Mr. Weisblatt has been, and will continue to be, injured as a result of Defendants'

14  conduct alleged herein, in that he paid more than he otherwise would have for his iPad and/or

15  related services, has been denied important benefits that he was promised by Defendants and that

16  he paid for, and will be assessed excessive charges for downloading data to his iPad.

17                        **CLASS ACTION ALLEGATIONS**

18         44.     Plaintiff brings this action on behalf of himself and all others similarly situated, as

19  members of a proposed nationwide class (the "Class") initially defined as:

20         All persons in the United States who purchased an Apple iPad with
       3G capability between April 30, 2010 and June 6, 2010.
21

22         Excluded from this Class is any person, firm, trust, corporation, or
       other entity related to or affiliated with Apple Inc., AT&T Inc., and
       AT&T Mobility LLC.
23

24         45.     This action is brought and may properly be maintained as a class action pursuant

25  to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). This action satisfies the

26  numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of

27  these provisions.

28

CLASS ACTION COMPLAINT
CASE NO. _____

46.     <u>Typicality Under Rule 23(a)(1)</u>. The Class is so numerous that the individual joinder of all members is impracticable.  While the Class's exact number and the identity of Class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff is informed and believes that the Class includes at least tens of thousands of individuals, if not many more.

47.     <u>Commonality Under Rule 23(a)(2)</u>. Common legal and factual questions exist that predominate over any questions affecting only individual Class members.  These common questions, which do not vary from Class member to Class member, and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to whether:

a.     The offer of an unlimited data plan and/or the ability to switch in and out of an unlimited data plan are material facts that reasonable purchasers would have considered important in making their purchase decisions;

b.     Defendants engaged in unfair, false, misleading, or deceptive acts or practices regarding its marketing and sale of 3G-capable iPads, in violation of the UCL;

c.     Defendants represented, through their words and conduct, that their iPads with 3G capability had characteristics, uses, or benefits they did not actually have, in violation of the CLRA;

d.     Defendants advertised the 3G-capable iPads with the intent not to sell them as advertised, in violation of the CLRA;

e.     Defendants' conduct regarding the marketing and sale of its 3G iPads was likely to mislead or deceive, and is therefore fraudulent, within the meaning of the UCL;

f.     Defendants' conduct alleged herein constitutes false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

g.     Defendants' conduct alleged herein constitutes fraud and/or intentional misrepresentation;

- 11 -

1      h.  Defendants' conduct alleged herein constitutes negligent

2 misrepresentation;

3      i.  Defendants have been unjustly enriched by their conduct alleged

4 herein;

5      j.  Plaintiff and the Class are entitled to injunctive and/or other

6 equitable relief, including restitution and disgorgement, and if so, the nature and amount of such

7 relief;

8      k.  Defendants are liable for actual and/or compensatory damages, and,

9 if so, the amount of such damages;

10      l.  Defendants are liable for punitive damages, and if so, the amount of

11 such damages.

12   48.  <u>Typicality Under Rule 23(a)(3).</u> Plaintiff's claims are typical of the Class

13 members' claims.  Defendants' common course of conduct caused Plaintiff and all Class

14 members the same damages.  In particular, Defendants' conduct caused each Class member's

15 economic losses.  Likewise, Plaintiff and other Class members must prove the same facts in order

16 to establish the same claims.

17   49.  <u>Adequacy of Representation Under Rule 23(a)(4).</u> Plaintiff is an adequate Class

18 representative because he is a Class member and his interests do not conflict with Class interests.

19 Plaintiff retained counsel competent and experienced in consumer protection class actions, and

20 together Plaintiff and counsel intend to prosecute this action vigorously for the Class's benefit.

21 Plaintiff and his counsel will fairly and adequately protect Class interests.

22   50.  The Class can be properly maintained under Rule 23(b)(2).  Defendants have acted

23 or refused to act, with respect to some or all issues presented in this Complaint, on grounds

24 generally applicable to the Class, thereby making appropriate final injunctive relief with respect

25 to the Class as a whole.

26   51.  The Class can be properly maintained under Rule 23(b)(3).  A class action is

27 superior to other available methods for the fair and efficient adjudication of this litigation because

28 individual litigation of each Class member's claim is impracticable.  Even if each Class member

CLASS ACTION COMPLAINT
CASE NO. _____

1   could afford individual litigation, the court system could not.  It would be unduly burdensome if

2   thousands of individual cases proceed.  Likewise, individual litigation presents a potential for

3   inconsistent or contradictory judgments, the prospect of a race for the courthouse, as well as the

4   risk of an inequitable allocation of recovery among those with equally meritorious claims.

5   Individual litigation further increases the expense and delay to all parties and the courts because it

6   requires individual resolution of common legal and factual questions.  By contrast, the class

7   action device presents far fewer management difficulties and provides the benefit of a single

8   adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Intentional Misrepresentation)

52.   Plaintiff, individually and on behalf of the Class, incorporates by reference all of
the allegations contained in the preceding paragraphs of this Complaint.

53.   As alleged herein, in the course of conducting their business of selling iPads and
related services, Defendants have intentionally made numerous material misrepresentations of
fact to Plaintiff and all members of the Class concerning the benefits of purchasing an iPad with
3G capability and the nature of customers' unlimited 3G data plan options.

54.   Defendants intentionally failed to disclose material information regarding the
nature of 3G data plan options to Plaintiff and the Class.

55.   Defendants' misrepresentations alleged herein were the type of misrepresentations
that are material—*i.e.,* a reasonable person would attach importance to them and would be
induced to act on the information in making purchase decisions.

56.   Defendants knew that the misrepresentations alleged herein were false at the time
they made them and/or acted recklessly in making such misrepresentations.

57.   In making the misrepresentations alleged herein, Defendants intended that Plaintiff
and the Class would rely on such misrepresentations and purchase iPads with 3G capability.

CLASS ACTION COMPLAINT
CASE NO. _____

58.     Defendants' misrepresentations alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

59.     Plaintiff and the Class reasonably and justifiably relied to their detriment on Defendants' intentional misrepresentations.

60.     Defendants' intentional misrepresentations were a substantial factor in causing Plaintiff and the Class to purchase iPads with 3G capability from Defendants.

61.     As a proximate result of Defendants' intentional misrepresentations, Plaintiff and each member of the Class suffered damages in an amount to be proven at trial.

62.     Defendants directly benefited from, and were unjustly enriched by, their intentional misrepresentations.

63.     Defendants acted with "malice," as that term is defined in Cal. Civ. Code § 3294(c)(1), by engaging in the conduct alleged herein, which was specifically intended by Defendants to cause substantial injury to Plaintiff and the members of the Class.

64.     Defendants' conduct alleged herein constitutes "fraud," as that term is defined in Cal. Civ. Code 3294(c)(3), because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants, and was done with the intent to cause injury to its customers.

65.     Plaintiff and the Class are entitled to actual and punitive damages and attorneys' fees under Cal. Civ. Code § 3294(a).

66.     As a proximate result of Defendants' intentional misrepresentations, Plaintiff and each member of the Class suffered an ascertainable loss and are entitled to equitable relief and compensatory and punitive damages, in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### (False Promise/Fraud)

67.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

- 14 -

68.     Defendants made false promises to Plaintiff and all members of the Class regarding the benefits of purchasing iPads with 3G capability and the nature of customers' unlimited 3G data plan options.

69.     Defendants made such false promises for the purpose of inducing Plaintiff and the Class to purchase iPads with 3G capability.

70.     The false promises alleged herein were the type of promises considered to be material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

71.     Defendants made such false promises with the knowledge that they would not fulfill them and with the intention of not fulfilling them.

72.     The false promises alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such promises may be presumed as a matter of law.

73.     Plaintiff and the Class reasonably and justifiably relied to their detriment on Defendants' false promises.

74.     Defendants' false promises were a substantial factor in causing Plaintiff and the Class to purchase iPads with 3G capability from Defendants.

75.     As a proximate result of Defendants' false promises, Plaintiff and each member of the Class suffered damages in an amount to be proven at trial.

76.     Defendants directly benefited from, and were unjustly enriched by, having made the false promises alleged herein.

77.     Defendants acted with "malice," as that term is defined in Cal. Civ. Code § 3294(c)(1), by engaging in the conduct alleged herein, which was specifically intended by Defendants to cause substantial injury to Plaintiff and the members of the Class.

78.     Defendants' conduct alleged herein constitutes "fraud," as that term is defined in Cal. Civ. Code 3294(c)(3), because such conduct involved Defendants making material promises, which Defendants knew to be false, with the intent to cause injury to its customers.

79.     Plaintiff and the Class are entitled to actual and punitive damages and attorneys' fees under Cal. Civ. Code § 3294(a).

80.     As a proximate result of Defendants' false promises, Plaintiff and each member of the Class suffered an ascertainable loss and are entitled to equitable relief and compensatory and punitive damages, in amounts to be proven at trial.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

81.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

82.     As alleged herein, in the course of conducting their business of selling iPads and related services, Defendants have made numerous material misrepresentations of fact to Plaintiff and all members of the Class concerning the benefits of purchasing an iPad with 3G capability and the nature of customers' unlimited 3G data plan options.

83.     Defendants failed to disclose material information regarding the nature of 3G data plan options to Plaintiff and the Class.

84.     Defendants' misrepresentations alleged herein were supplied to customers for the purpose of affecting their purchase decisions.

85.     Defendants had no reasonable grounds for believing that its misrepresentations were true.

86.     Defendants failed to exercise reasonable care and/or diligence in communicating its misrepresentations to customers and failing to disclose material information to customers.

87.     Defendants' misrepresentations alleged herein were the type of misrepresentations that are material—*i.e.,* a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

88.     Defendants' misrepresentations alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

89.     Plaintiff and the Class reasonably and justifiably relied to their detriment on Defendants' misrepresentations.

90.     Defendants' misrepresentations were a substantial factor in causing Plaintiff and the Class to purchase iPads with 3G capability from Defendants.

- 16 -

91.     As a proximate result of Defendants' misrepresentations, Plaintiff and each member of the Class suffered damages in an amount to be proven at trial.

92.     Defendants directly benefited from, and were unjustly enriched by, their misrepresentations.

**FOURTH CAUSE OF ACTION**
**(Violation of Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, _et seq._)**

93.     Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

94.     Defendants are "persons" as defined in Cal. Civil Code § 1761(c).

95.     Plaintiff and the Class members are "consumers" as defined in Cal. Civil Code § 1761(d).

96.     The iPads that Plaintiff and the Class purchased from Defendants are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a), (b).

97.     The 3G wireless services that Plaintiff and the Class purchased from Defendants are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a), (b).

98.     The purchases by Plaintiff and the Class of the goods and services sold by Defendants, alleged herein, constitute "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

99.     In connection with their sale of goods and services to Plaintiff and the Class, Defendants violated the Consumer Legal Remedies Act ("CLRA") in at least the following ways:

    a.      Misrepresenting to Plaintiff and the Class that they would be able to subscribe to, and switch in and out of, the unlimited data plan in the future as their monthly data needs demanded, whether or not they initially signed up for the unlimited data plan, in violation of Cal. Civ. Code §§ 1770(a)(5), (9) & (14);

    b.      Misrepresenting to Plaintiff and the Class that Defendants' goods and services had characteristics and benefits they did not have, in violation of Cal. Civ. Code § 1770(a)(5);

- 17 -

c.     Misrepresenting that their transactions with Plaintiff and the Class conferred benefits and rights on Plaintiff and the Class, and obligations on Defendants, which were not, in fact, conferred, in violation of Cal. Civ. Code § 1770(a)(14); and

d.     Advertising goods and services to Plaintiff and the Class with the intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(a)(9).

100.   In addition, under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

101.   Defendants had a duty to disclose to Plaintiff and the Class the true nature of the unlimited data plan options because: (a) Defendants had exclusive knowledge of the information at the time of sale; (b) Defendants actively concealed from Plaintiff and the Class the true nature of the unlimited data plan options, which was material information to customers; and (c) Defendants made partial representations to Plaintiff and the Class regarding the nature of the unlimited data plan options.

102.   Defendants violated the CLRA by concealing material information from Plaintiff and the Class regarding the true nature of the unlimited data plan options when they had a duty to disclose that information.

103.   Defendants' misrepresentations and omissions in violation of the CLRA were likely to mislead consumers. Plaintiffs and the Class reasonably interpreted Defendants' representations and omissions to mean that they would be able to subscribe to, and switch in and out of, the unlimited data plan in the future as their monthly data needs demanded, whether or not they initially signed up for the unlimited data plan.

104.   Defendants' conduct alleged herein was intentional and was specifically designed to induce customers to purchase iPads with 3G capability.

105.    Defendants' misrepresentations and omissions alleged herein were material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

106.    Plaintiff and the Class relied to their detriment on Defendants' misrepresentations and omissions in purchasing their iPads with 3G capability.

107.    Plaintiff, on behalf of himself and the Class, demands judgment against Defendants under the CLRA for injunctive relief and restitution to Plaintiff and the Class in an amount to be proven at trial.

108.    Plaintiff, on behalf of himself and the Class, further intends to seek compensatory damages and, in light of Defendants' intentional and fraudulent conduct, an award of punitive damages.

109.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiff will serve Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested.  If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for their violation of the CLRA, Plaintiff will amend this Complaint to seek monetary (both compensatory and punitive) damages under the CLRA.

110.    Notwithstanding any other statements in this Complaint, Plaintiff does not seek monetary damages in conjunction with his CLRA claim, and will not do so, until this thirty-day period has passed.

**FIFTH CAUSE OF ACTION**
**(Violation of Cal. Bus. & Prof. Code Section 17200, *et seq.*—Unlawful, Fraudulent, and Unfair Business Acts and Practices)**

111.    Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

112.    Defendants' conduct alleged herein constitutes unfair and deceptive business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*  Such conduct includes, but is not limited to, (a) misrepresenting to Plaintiff and the Class that they would be able to subscribe to, and switch in and out of, the unlimited data plan in the future as their monthly data needs demanded, whether or not they initially signed up for the unlimited data plan; (b)

- 19 -

1  concealing the true nature of the unlimited data plan options from Plaintiff and the Class; and (c)

2  denying Plaintiff and the Class the promised benefit of the continuing option to switch in and out

3  of the unlimited data plan and unilaterally imposing upon Plaintiff and the Class a choice between

4  less advantageous data plan options.

5        113.    In addition, the conduct alleged herein constitutes fraud, intentional

6  misrepresentation, negligent misrepresentation, unjust enrichment, and violations of the CLRA,

7  thus providing the basis for a finding of liability under the unlawful prong of Cal. Bus. & Prof.

8  Code §§ 17200 *et seq.*

9        114.    Defendants' unfair, unlawful, and deceptive acts and practices alleged herein were

10  specifically designed to induce Plaintiff and the Class to purchase iPads with 3G capability.

11        115.    Defendants' unfair, unlawful, and deceptive acts and practices alleged herein have

12  deceived and/or are likely to deceive Plaintiff and other reasonable consumers.

13        116.    Defendants' misrepresentations and omissions alleged herein were material in that

14  a reasonable person would attach importance to such information and would be induced to act

15  upon such information in making purchase decisions.

16        117.    Defendants' misrepresentations and omissions alleged herein are objectively

17  material to the reasonable consumer, and therefore reliance upon such misrepresentations may be

18  presumed as a matter of law.

19        118.    Plaintiff and the Class relied to their detriment on Defendants' misrepresentations

20  and omissions in purchasing their 3G-capable iPads from Defendants.

21        119.    Plaintiff and each member of the Class have been damaged as a result of

22  Defendants' unfair, unlawful, and deceptive conduct alleged herein.  They are entitled to

23  injunctive relief and restitution, in an amount to be proven at trial.

24                  **SIXTH CAUSE OF ACTION**
      **(Violation of Cal. Bus. & Prof. Code Section 17500, *et seq.*—False Advertising)**

25        120.    Plaintiff, individually and on behalf of the Class, incorporates by reference all of

26  the allegations contained in the preceding paragraphs of this Complaint.

27

28

CLASS ACTION COMPLAINT
CASE NO. _____

121.    Defendants have committed acts of untrue and misleading advertising, as defined by Cal. Bus. & Prof Code §§ 17500, *et. seq.*, by: (a) falsely advertising, on their respective websites and elsewhere, that customers who purchased the iPad with 3G capability would be able to subscribe to, and switch in and out of, the unlimited data plan in the future as their monthly data needs demanded, whether or not they initially signed up for the unlimited data plan; and (b) concealing material information about the unlimited 3G data plan options from consumers.

122.    Defendants' misrepresentations and omissions alleged herein deceive or have the tendency to deceive the general public regarding the benefits of purchasing a 3G-capable iPad and the nature of the unlimited data plan options.

123.    Defendants' misrepresentations and omissions alleged herein were the type of misrepresentations that are material—*i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

124.    Defendants' misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

125.    Defendants' false advertising continued right up until, and in fact after, the end of the Class period.

126.    Unless restrained by this Court, Defendants could continue to engage in untrue and misleading advertising, as alleged above, in violation of Cal. Bus. & Prof Code §§ 17500, *et. seq.* As a result of the foregoing, Plaintiff and each member of the Class have been injured and have lost money or property, and are entitled to restitution and injunctive relief.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

127.    Plaintiff, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint.

128.    As alleged herein, Defendants intentionally and/or recklessly made false representations to Plaintiff and the Class to induce them to purchase iPads with 3G capability.

1    Plaintiff and the Class have reasonably relied on these false representations in purchasing iPads

2    with 3G capability.

3         129.   As alleged herein, Defendants made false promises to Plaintiff and the Class which

4    Defendants did not intend to keep, and which Defendants did not keep, to induce Plaintiff and the

5    Class to purchase iPads with 3G capability.  Plaintiff and the Class have reasonably relied on

6    these false promises in purchasing iPads with 3G capability.

7         130.   As alleged herein, Plaintiff and the Class did not receive all of the benefits that

8    they were promised by Defendants, and paid more to Defendants for their products and services

9    than they otherwise would have paid, and will continue to do so.

10        131.   It would be inequitable and unconscionable for Defendants to retain the profits,

11   benefits, and other compensation they obtained from their deceptive, misleading, and unlawful

12   conduct alleged herein.

13        132.   Plaintiff and the Class are entitled to restitution of, disgorgement of, and/or the

14   imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by

15   Defendants from their deceptive, misleading, and unlawful conduct alleged herein.

16                              **PRAYER FOR RELIEF**

17        Plaintiff, on behalf of himself and the Class, request that the Court order the following

18   relief and enter judgment against Defendants as follows:

19        a.     An Order certifying the proposed Class and appointing Plaintiff and

20   his counsel to represent the Class;

21        b.     An Order that Defendants be permanently enjoined from its

22   improper activities and conduct described herein;

23        c.     A judgment awarding Plaintiff and the Class actual and

24   compensatory damages in an amount according to proof;

25        d.     A judgment awarding Plaintiff and the Class restitution in an

26   amount according to proof, including without limitation, restitution of, disgorgement of, and/or

27   the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained

28   by Defendants from their deceptive, misleading, and unlawful conduct alleged herein;

- 22 -

1      e.      A judgment awarding Plaintiff and the Class punitive damages;

2      f.      Pre-judgment and post-judgment interest;

3      g.      Attorneys' fees and expenses and the costs of this action; and

4      h.      All other and further relief as the Court deems necessary, just and

5  proper.

6                                  **JURY DEMAND**

7           Plaintiff hereby demands a trial by jury.

8                                  Respectfully submitted,

9  Dated: June 9, 2010             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

10
                                   By:_____
11                                        Michael W. Sobol

12                                 Michael W. Sobol (State Bar No. 194857)
                                   msobol@lchb.com
13                                 Roger N. Heller (State Bar No. 215348)
                                   rheller@lchb.com
14                                 Allison Elgart (State Bar No. 241901)
                                   aelgart@lchb.com
15                                 Embarcadero Center West
                                   275 Battery Street, 29th Floor
16                                 San Francisco, CA  94111-3339
                                   Telephone:  (415) 956-1000
17                                 Facsimile:  (415) 956-1008

18                                 *Attorneys for Plaintiff*

19
   881056.4
20

21

22

23

24

25

26

27

28

- 23 -                          CLASS ACTION COMPLAINT
                                CASE NO. _____