**E-FILED on** 10/18/2010

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAM WEISBLATT, JOE HANNA, and DAVID TURK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., AT&T INC., AT&T MOBILITY, LLC, and Does 1-10,<br><br>Defendants. | No. C-10-02553 RMW<br><br>ORDER ON DEFENDANT AT&T MOBILITY'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO STAY CASE<br><br>**[Re Docket No. 23]** |

Defendant AT&T Mobility LLC ("ATTM") moves to compel arbitration and to dismiss claims or, in the alterative, to stay. On October 15, 2010, the court held a hearing to consider defendant's motion. Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court denies ATTM's motion to compel arbitration without prejudice, denies a stay, but limits discovery to written discovery relevant to claims against defendant Apple.

## I. BACKGROUND

Plaintiffs Adam Weisblatt ("Weisblatt"), Joe Hanna ("Hanna"), and David Turk ("Turk") allege that defendants ATTM and Apple Inc. ("Apple") perpetrated a classic "bait and switch" fraud

scheme in connection with the sale of 3G capable iPads[1] for which ATTM is the exclusive 3G service provider. First Amended Complaint ("FAC") ¶ 1.

### A.   iPad 3G

On or around April 30, 2010, Apple began selling 3G enabled iPads, with ATTM as the exclusive 3G data provider. *Id.* ¶ 22. The 3G enabled iPads were priced approximately $130 higher than the equivalent Wifi iPad models without 3G capability. *Id.* Between April 30, 2010 and June 7, 2010, ATTM offered two 3G data plan options: (1) 250 MB of data for $14.99 per month, with additional data available in 250 MB increments for an added charge; or (2) unlimited 3G data for $29.99 per month. *Id.* ¶ 24. According to plaintiffs, ATTM made representations that customers would be able to sign up for, and change, their data plans each month as their data needs demanded, including upgrading or switching in and out of the unlimited data plan on a monthly basis in the future. *Id.* ¶ 26. Plaintiffs allege that the unlimited 3G data plan was heavily promoted, including during the time before the 3G-enabled iPad was actually available for sale, as a key feature that made the $130 price difference worthwhile. *Id.* ¶¶ 25, 27-28, 31.

Plaintiffs further allege that ATTM continued to promote its flexible and unlimited data plan options up to June 2, 2010, when it announced that as of June 7, 2010, it would no longer provide an unlimited data option. *Id.* ¶ 34. Consequently, iPad purchasers who initially opted for the limited data plan no longer have the option to switch in and out of an unlimited plan. *Id.* ¶ 36. Even so, plaintiff's who were signed up for an unlimited data plan as of June 7, 2010 were allowed to maintain an unlimited data plan. *Id.* However, if those customers ever discontinue subscribing to the unlimited data plan (*e.g.*, by changing to a different data plan or eliminating the data plan altogether), they cannot switch back to the unlimited data plan. *Id.* In other words, plaintiffs allege that the defendants touted the availability of an unlimited 3G data plan and the option to switch in and out of the unlimited data plan, but subsequently withdrew the unlimited data plan option. Plaintiffs contend that defendants' misleading statements induced them to buy the 3G-enabled iPad

---

[1] The iPad is a mobile computing and multimedia device with a touch screen interface manufactured by defendant Apple. It comes in a WiFi only model or a WiFi plus 3G capable model.

United States District Court
For the Northern District of California

rather than the less expensive WiFi only model. *Id.* ¶¶ 37-39. What's more, plaintiffs allege that ATTM's decision to eliminate the unlimited data plan option was made after the 14 day return window had ended for many initial iPad purchasers. *Id.* ¶ 40.

### B. Arbitration Agreement

Customers who wish to activate 3G wireless data on the iPad must purchase a service plan from ATTM, the exclusive 3G provider for the iPad. First, the customer must follow several screens on the iPad and enter requested information at each step. Decl. of Kimberly D. Eubank, Dkt. No. 25 at ¶ 4. Before the customer can complete the activation process, the terms of ATTM's Session Based Wireless Data Services Agreement (the "iPad Agreement") are displayed for the customer in a scrollable text box with buttons labeled "Agree" and "Back" at the bottom. *Id.* To activate the wireless data service on the iPad, the customer must click the "Agree" button. *Id.* The iPad Agreement is 16 pages long and includes, among other things, an arbitration agreement:

> **3.2 Arbitration Agreement**
> (1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
> - claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
> - claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
> - claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
> - claims that may arise after the termination of this Agreement

*Id.* Ex. 2 at 8. Moreover, the arbitration agreement expressly prohibits class actions: "**You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action**." *Id.* Additionally, the iPad Agreement contains a provision specifying that the "law of the state of [the customer's] address shall govern [the] Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law." *Id.* Ex. 2 at 15.

### C. Parties

On April 30, 2010, plaintiff Turk, a Washington resident, purchased two 3G-enabled iPads at an Apple store in Washington. FAC ¶¶ 12, 60. On May 18, 2010, Turk purchased a third 3G-

enabled iPad. *Id.* ¶ 61. All three of Turk's iPads were activated under the terms of ATTM's iPad Agreement. *Id.* ¶¶ 64, 66. Similarly, plaintiff Weisblatt, a New York resident, purchased a 3G-enabled iPad at an Apple store in New York on April 30, 2010. *Id.* ¶¶ 10, 45. On May 2, 2010, Weisblatt activated 3G service under the terms of ATTM's iPad Agreement. *Id.* ¶ 49. Plaintiff Hanna, a California resident, purchased a 3G-enabled iPad on April 30, 2010 at a Best Buy store in California. *Id.* ¶¶ 11, 53-54. But Hanna never activated a 3G data plan for his iPad. *Id.* ¶ 56. Even though Hanna never accepted the terms of ATTM's iPad Agreement, ATTM claims that Hanna accepted an arbitration agreement and choice of law provision when he used ATTM's website to purchase an iPhone 3GS on June 11, 2009. Decl. of Caroline Mahone-Gonzalez, Dkt. No. 26 ¶ 4, Ex. 1. Turk, Weisblatt, and Hanna, who seek to represent a nationwide class of iPad owners, allege that ATTM and Apple have committed common law fraud and violated various California consumer protection statutes. *Id.* ¶¶ 78-159.

Defendant ATTM now moves to compel arbitration and to dismiss all claims against it. In the alternative, ATTM moves for a stay pending a Supreme Court decision in *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) (No. 09-893). Defendant Apple has joined ATTM's motion to stay.

## II. ANALYSIS

### A.   Motion to Compel Arbitration

Plaintiffs' allege that the class action waiver in ATTM's arbitration agreement effectively exculpates ATTM from potential liability for small claims and is therefore unconscionable and unenforceable. The Ninth Circuit has recently held that an earlier version of ATTM's arbitration provision is unconscionable under California law. *Laster v. AT&T Mobility, LLC*, 584 F.3d 849 (9th Cir. 2009). But the Supreme Court has granted ATTM's petition for certiorari in *Laster* to determine whether the FAA preempts state law and requires enforcement of ATTM's arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) (No. 09-893). Similarly, the district court in *Coneff v. AT&T Corp.* found that a different AT&T class action waiver was substantively unconscionable under Washington law. 620 F. Supp. 2d 1248 (W.D. Wash. 2009). The *Coneff* decision has been appealed to the Ninth Circuit, but is currently stayed pending a

Supreme Court decision in *Concepcion*. *See* Order, *Coneff v. AT&T Corp.*, No. 09-35563 (9th Cir. June 2 2010). The question presented by the certiorari petition in *Concepcion* is:

> Whether the Federal Arbitration Act preempts States from conditioning the enforcement of an arbitration agreement on the availability of particular procedures-here, class-wide arbitration-when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims.

Petition for Writ of Certiorari, *Concepcion*, 2010 WL 304265 (No. 09-893).

Given the likelihood that the Supreme Court will speak directly to the class action waiver issue in *Concepcion*, compelling arbitration at this point would be unwarranted. Even though plaintiffs' arguments regarding the unconscionability of the class action waiver may have less merit under New York law,[2] a Supreme Court decision in *Concepcion* is still likely to simplify the issue. Accordingly, ATTM's motion to compel arbitration is denied without prejudice.

### B. Motion to Stay

Several courts have considered whether to stay similar claims pending a Supreme Court decision in *Concepcion*.[3] While ATTM moves for this court to compel arbitration with respect to each plaintiff, it alternatively asks for a stay pending a decision in *Concepcion*.

With respect to stays, the Supreme Court has stated:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (U.S. 1936). The court must weigh the following competing interests:

---

[2] *See Douglas v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1068 (9th Cir. 2007) (holding that "class action waiver provision[s] . . . aren't substantively unconscionable under New York law").

[3] *See* Order, *Knudtson v. AT&T Mobility LLC*, No. 10-35242 (9th Cir. June 10, 2010) (staying appeal pending a decision in *Concepcion*); Order, *Coneff v. AT&T Corp.*, No. 09-35563 (9th Cir. June 2, 2010) (same); *Kaplan v. AT&T Mobility, LLC*, No. CV CAS 10-3594 (EX) (C.D. Cal. Sept. 27, 2010) (staying action pending a decision in *Concepcion*); *Carney v. Verizon Wireless Telecom, Inc.*, 2010 WL 3058106 (S.D. Cal. Aug. 2, 2010) (same); *McArdle v. AT&T Mobility LLC*, 2010 WL 2867305 (N.D. Cal. July 20, 2010) (same); *Gaspar v. AT&T Mobility, LLC*, No. CV 10-2136 DSF (Ssx) (C.D. Cal. June 28, 2010) (same); *Kaltwasser v. Cingular Wireless LLC*, 2010 WL 2557379 (N.D. Cal. June 21, 2010) (postponing class certification until *Concepcion* is resolved).

> [T]he possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

Here, plaintiffs argue that ATTM would not suffer any undue hardship if a stay were denied because it would still be required to litigate claims on behalf of class members who never activated 3G service and consequently never agreed to ATTM's iPad Agreement. Moreover, plaintiffs argue that their claims against Apple should be allowed to proceed, regardless of the outcome with respect to ATTM.

On the other hand, ATTM argues that each of the named plaintiffs is bound by an arbitration agreement with ATTM, including plaintiff Hanna through his iPhone 3GS arbitration agreement with ATTM. At the same time, Apple relies on *Steiner v. Apple Computer, Inc.*, 2008 WL 1925197 (N.D. Cal. Apr 29, 2008) for the proposition that a complete stay is appropriate where appellate proceedings are pending regarding co-defendant ATTM's arbitration provision.

On balance, the court finds that a stay is unwarranted. That said, the claims with respect to ATTM will likely be affected by the Supreme Court's decision in *Concepcion.* Accordingly, it makes little sense to begin discovery with respect to the claims focused on ATTM. Also, the court at this time declines to decide whether plaintiff Hanna's iPhone 3GS arbitration agreement now applies to his iPad dispute. In any event, *Concepcion* is likely to clarify the enforceability of the iPhone 3GS arbitration agreement as well as the iPad arbitration agreement.

Unlike other cases where courts have completely stayed proceedings pending a decision in *Concepcion*, this case involves a defendant and claims that are not inseparable from the claims against ATTM. Moreover, Apple's reliance on *Steiner* is misplaced. In that case, the court issued a *sua sponte* stay after the plaintiff contended that a stay with regard to ATTM and not Apple would create "a chaotic state of affairs." *Steiner*, 2008 WL 1925197 at * 6 n.16. Plaintiffs make no such contention here. Rather, plaintiffs note that ATTM is not an indispensable party. Specifically, plaintiffs argue that the "claims here center around specific misrepresentations made by each Defendant, each of which is independently actionable against the party that made them, without

1 regard to the intent, knowledge, or liability of the other Defendant." Dkt. No. 42 at 22. To be sure, plaintiffs' claims are related to ATTM's iPad data plans. But that does not mean that plaintiffs' claims involving *Apple's* alleged conduct and misrepresentations should be stayed pending a decision in *Concepcion*. Because plaintiffs' claims against Apple are not subject to the ATTM arbitration agreement and appear to be independently actionable, a stay with respect to Apple is unwarranted.

For the reasons set forth, the court limits discovery pending *Concepcion* to written discovery relevant to claims against defendant Apple.

## III. ORDER

For the foregoing reasons, the motion to compel arbitration or in the alternative to stay the case is denied without prejudice. The court hereby also denies to stay the action against ATTM or Apple, but limits discovery to written discovery relevant to claims against Apple pending a decision in *Concepcion*. The parties are to submit a mutually agreed upon discovery plan limited to written discovery relevant to claims against Apple. The court also hereby resets the Case Management Conference to Friday, December 17 at 10:30 am.

DATED: 10/18/2010

RONALD M. WHYTE
United States District Judge