**E-FILED on** 7/18/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re<br><br>Apple and AT&T iPad Unlimited Data Plan Litigation | No. C-10-02553 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE MASTER CONSOLIDATED COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE<br>**[Re Docket No. 76]** |

Defendant AT&T Mobility LLC ("ATTM") moves to dismiss the master consolidated complaint ("MCC"). On March 25, 2011, the court held a hearing to consider defendant's motion. Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court grants in part and denies in part ATTM's motion to dismiss and denies ATTM's motion to strike.

## I. BACKGROUND

Plaintiffs Adam Weisblatt ("Weisblatt"), Joe Hanna ("Hanna"), David Turk ("Turk"), and Colette Osetek ("Osetek") (collectively "plaintiffs") allege that defendants ATTM and Apple Inc.

("Apple") perpetrated a classic "bait and switch" fraud scheme in connection with the sale of 3G capable iPads[1] for which ATTM was the exclusive 3G service provider. MCC ¶ 1.

### A. iPad 3G

On or around April 30, 2010, Apple began selling 3G-enabled iPads, with ATTM as the exclusive 3G data provider. *Id.* ¶ 25. The 3G-enabled iPads were priced approximately $130 higher than the equivalent Wifi iPad models without 3G capability. *Id.* ¶ 26. Between April 30, 2010 and June 7, 2010, ATTM offered two 3G data plan options: (1) 250 MB of data for $14.99 per month, with additional data available in 250 MB increments for an added charge; or (2) unlimited 3G data for $29.99 per month. *Id.* ¶¶ 30, 32. Plaintiffs claim that ATTM and Apple made representations that customers would be able to sign up for, and change, their data plans each month as their data needs demanded, including upgrading or switching in and out of the unlimited data plan on a monthly basis in the future. *Id.* ¶¶ 34, 35. Plaintiffs allege that the flexible, unlimited 3G data plan was heavily promoted, including during the time before the 3G-enabled iPad was actually available for sale, as a key feature that made the $130 price difference worthwhile. *Id.* ¶¶ 30-36. During a presentation, Apple CEO Steve Jobs made the following statements regarding the wireless data plans for the 3G-enabled iPad:

> Now, what does it cost for the data plans? Well, in the U.S., telecom companies usually charge about $60 a month for a data plan ofr a laptop. We've got a rel breakthrough here. We've got two awesome plans for iPad owners. The first one gives you up to 250 megabytes of data per month. That's a fair bit of data. Most people will get by on that. Up to 250 megabytes of data per month, just $14.99. $14.99. And if you feel you need more, we have an unlimited plan just for $29.99. So these are real breakthrough prices. We've got a breakthrough deal with AT&T. It's providing the service. $14.99 for up to 250 megabytes, $29.99 for unlimited data . . . . And, there's no contract, it's prepay.

*Id.* ¶ 30. Apple's website also advertised to prospective 3G-enabled iPad customers that they could "choose the amount of data per month . . . 250 MB or unlimited" and "decide whether to turn off 3G or upgrade to the unlimited plan." *Id.* ¶ 30, Exh. C. Likewise, ATTM posted similar content on its website:

---

[1] The iPad is a mobile computing and multimedia device with a touch screen interface manufactured by defendant Apple. It comes in a WiFi only model or a WiFi plus 3G capable model.

United States District Court
For the Northern District of California

> AT&T offers two data plan options–250 MB or unlimited data, with recurring monthly charge and no long-term contract.  To help you manage data with a 250 MB plan, iPad will notify you at 20%, 10%, and when there 's no more data available, so you can decide if you want to add more data or upgrade to an unlimited data plan.

*Id.* ¶ 35, Exh. B.  In sum, plaintiffs allege that:

> Defendants marketed and advertised the unlimited data plan, and the ability to switch in and out of the unlimited data plan, to induce consumers to purchase iPads with 3G capability.  The iPads with 3G capability cost significantly more than the equivalent iPads without 3G capability, but they were seen as worth the added cost by consumers who wanted the flexibility and option of getting unlimited 3G data for a fixed cost when needed.

*Id.* ¶ 39.

Plaintiffs further allege that defendants continued to promote their flexible and unlimited data plan options up to June 2, 2010, when defendants announced that as of June 7, 2010 they would no longer provide an unlimited data option.[2]  *Id.* ¶ 42.  Consequently, iPad purchasers who initially opted for the limited data plan no longer have the option to switch in and out of an unlimited plan. *Id.* ¶ 44.  Even so, customers who were signed up for an unlimited data plan as of June 7, 2010 were allowed to maintain an unlimited data plan.  *Id.*  However, if those customers ever discontinue subscribing to the unlimited data plan (*e.g.*, by changing to a different data plan or eliminating the data plan altogether), they cannot switch back to the unlimited data plan.  *Id.*  In other words, plaintiffs allege that the defendants touted the availability of an unlimited 3G data plan and the option to switch in and out of the unlimited data plan, but subsequently withdrew the unlimited data plan option one month after Apple began selling the 3G-enabled iPad.  Plaintiffs contend that defendants' misleading statements and omissions regarding the availability of the unlimited data plan induced them to buy the 3G-enabled iPad rather than the less expensive WiFi only model.  *Id.* ¶¶ 37-39.  Plaintiffs also point out that the defendants' decision to eliminate the unlimited data plan option was made after the 14 day return window had ended for many initial iPad purchasers.  *Id.* ¶ 48.

---

[2] Plaintiffs also allege that "[e]ven after the June 7, 2010 change took effect, Apple's website continued to misrepresent to customers that the unlimited data plan was available for 3G-enabled iPads and that customers would be able to upgrade in the future to the unlimited data plan, and switch in and out of the unlimited data plan, as their data needs demanded." MCC ¶ 50.  On or around June 4, 2010, defendants announced that the unlimited data plan would be available for all customers who ordered 3G-enabled iPads before June 7, 2010, even if they received their iPads after June 7, 2010.  *Id.* ¶ 51.  Even so, the ability to switch in and out of an unlimited data plan appears to have ended for all customers on June 7, 2010.  *Id.*

### B. Plaintiffs

Plaintiff Weisblatt, a New York resident, purchased a 3G-enabled iPad at an Apple store in New York on April 30, 2010. *Id.* ¶¶ 11, 53, 55. On May 2, 2010, Weisblatt activated 3G service for his iPad. *Id.* ¶ 49. Plaintiff Hanna, a California resident, purchased a 3G-enabled iPad on April 30, 2010 at a Best Buy store in California. *Id.* ¶¶ 12, 61. Hanna has not activated a 3G data plan for his iPad and appears to have generally been either home or in another place where he has had WiFi access. *Id.* ¶ 64. Hanna claims to have "anticipated using the unlimited data plan in some months and not in others." *Id.* On April 30, 2010, plaintiff Turk, a Washington resident, purchased two 3G-enabled iPads at an Apple store in Washington. *Id.* ¶¶ 13, 68. On May 18, 2010, Turk purchased a third 3G-enabled iPad. *Id.* ¶ 69. All three of Turk's iPads were activated for 3G service. *Id.* ¶¶ 72, 74. In fact, Mr. Turk signed up for unlimited data plans for two of his iPads on June 20, 2010 because, as a result of defendants' June 7, 2010 policy change, he believed that this was his only chance to obtain an unlimited 3G data plan. Finally, plaintiff Osetek, a Massachusetts resident, purchased a 3G-enabled iPad at an Apple store in Braintree, Massachusetts on April 30, 2010. *Id.* ¶¶ 14, 78. On May 7, 2010, Osetek signed up for the unlimited 3G data plan. *Id.* ¶ 81.

All four named plaintiffs claim that they purchased 3G-enabled iPads believing that they would have the flexibility of switching in and out of an unlimited data plan based upon their monthly needs. *Id.* ¶¶ 57, 64, 74, 81. Plaintiff also allege that had they known that defendants would pull the flexible unlimited data option, they would not have purchased 3G-enabled iPads. *Id.* ¶¶ 59, 66, 76, 83.

### C. Claims

Plaintiffs assert seven claims against defendants: (1) intentional misrepresentation; (2) false promise/fraud; (3) negligent misrepresentation; (4) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code. §§ 1750 *et seq.*; (5) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (6) violation of California's false advertising law ("FAL"), Cal. Bus.& Prof. Code §§ 17500 *et seq.*; and (7) unjust enrichment. *Id.* ¶¶ 93-175. Plaintiffs bring this action on behalf of all customers in the United States who purchased iPad 3Gs prior to the June 7, 2010 data plan change.

Defendant ATTM now moves to dismiss all claims against it as well as strike plaintiff Osetek's claims against it.

## II.  ANALYSIS

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1939, 1949 (2009). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A.    Rule 9(b)

ATTM contends that all the claims in the MCC fail because plaintiffs allegations do not satisfy Fed. R. Civ. P. 9(b). Under Rule 9(b), all "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted). Moreover, Rule 9(b) requires plaintiffs to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). In *Kearns v. Ford Motor Co.*, the Ninth Circuit specifically held that Rule 9(b) requires all "averments of fraud" to be pled with particularity "irrespective of whether the substantive law at issue is state or federal," and even where "fraud is not an essential element of a claim." 576 F.3d 1120, 1124-25 (9th Cir. 2009). Rule 9(b)'s heightened pleading standards apply to CLRA and UCL claims as well because those claims are "grounded in fraud" or "sound in fraud." *Id.* For the same reason, courts have also applied Rule 9(b) to claims under California's FAL. *See, e.g.*, *Herrington v. Johnson & Johnson Consumer Co., Inc.*, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010).

ATTM argues that a single screenshot from its website is not enough to satisfy the particularity requirements of Rule 9(b). But plaintiffs do not rely on ATTM's affirmative statements alone. Rather, plaintiffs allege that ATTM's statements were misleading to customers in the absence of omitted information. The court finds that the specific information that ATTM allegedly concealed–that it would almost immediately be canceling the unlimited plan and denying customers

flexible access to such a plan, and that this was its intention all along–is sufficiently set forth in the MCC.

ATTM further argues that plaintiffs fail to specify "when" the allegedly fraudulent misrepresentations were made. Insofar as plaintiffs allege that omissions are part of the fraud, a specific "when" does not exist. But plaintiffs do allege that ATTM made affirmative misrepresentation throughout the period between January 2010 and June 7, 2010. MCC ¶¶ 35, 36, 41. The screenshot from ATTM's website is an example. Also, plaintiffs allege that they saw ATTM's misrepresentations on the dates they made their iPad 3G purchases. At the same time, plaintiffs allege that ATTM knew about and benefitted from the statements on Apple's website. MCC ¶ 27, Ex. B, G. Moreover, it is plausible that additional details regarding their specific conduct will be revealed through discovery. Indeed, "the requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy'" or "when the facts lie more in the knowledge of the opposite party." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.Rptr.2d 861, 863 (1991) (quoting *Turner v. Milstein*, 230 P.2d 25 (1951)).

ATTM also contends that plaintiffs fail to plead falsity with particularity. However, the MCC alleges that defendants' statements were false when made because they led customers to believe that they would have flexible access to ATTM's unlimited data plan in future months. Plaintiffs also allege that ATTM had no intention of providing such benefits to customers. MCC ¶¶ 41-46. *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."). Plaintiffs do not allege that ATTM was required to provide flexible access to unlimited data in perpetuity. Instead, plaintiffs only allege that defendants statements regarding a flexible, unlimited data plan required the benefit to last a reasonable number of future months in order to materialize. At bottom, the MCC successfully pleads the falsity of defendants statements with sufficient particularity.

ATTM further argues that plaintiffs do not plead reliance. ATTM is mistaken. Plaintiffs repeatedly allege that both Apple's and ATTM's statements were material to them and had they

known that there would be no flexible unlimited data plan, they would not have purchased their iPad 3Gs. MCC ¶¶ 59, 66, 76, 83. Significantly, plaintiffs claim that ATTM was aware of Apple's alleged misrepresentations, but did nothing to counter the statements, and even endorsed them. *Id.* ¶ 30, Exh. G. In sum, plaintiffs' allegations meet the requirements of Rule 9(b).

### B.     Standing of Non-California Plaintiffs Under CLRA, UCL and FAL

ATTM argues that plaintiffs Weisblatt, Turk, and Osetek lack standing to assert claims under California's consumer protection laws. As ATTM points out, "California law embodies a presumption against the extraterritorial application of its statutes." *Churchill Village, L.L.C v. General Elec. Co.*, 169 F.Supp. 2d 1119, 1126 (N.D. Cal. 2000). Moreover, ATTM's choice-of-law provision in its Terms of Service selects the law of each consumer's respective home state. Dkt. No. 25-2 at 15. Plaintiffs cannot bypass the choice-of-law provision because they fail to adequately explain how California's interest is greater than each consumer's respective home state. Even more to the point, plaintiffs do not contend that the application of the laws of their home states would violate a fundamental policy of California. *See General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995) (holding that the application of New York law to fraud claims did not violate California public policy, even if New York law required fraud to be established by clear and convincing evidence while California only required a showing by a preponderance of the evidence). Furthermore, plaintiffs' arguments that the choice-of-law provision is procedurally unconscionable or unfairly hinders a multi-state class action are unconvincing. *See Wash. Mut. Bank, F.A. v. Super. Ct.*, 24 Cal. 4th 906, 817 (2001) (holding that a choice of law provision may not be disregarded "merely because it may hinder the prosecution of multi-state or nationwide class action or [exclude] nonresident consumers from a California-based class action"). Accordingly, the CLRA, UCL, and FAL claims are dismissed without prejudice as to Weisblatt, Turk and Osetek because they are non-California residents who purchased their iPad and data plans outside of California and agreed to ATTM's choice-of-law provision.

### C.     Restitution Under UCL and FAL

ATTM contends that plaintiffs have failed to allege a proper basis for restitution under the UCL and FAL. The UCL and FAL "limit standing to individuals who suffer losses . . . that are

eligible for restitution." *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 817, 819 (Cal. App. 2d 2007). As ATTM points out, *Kwikset Corp. v. Super. Ct.*, 2011 WL 240278 (Jan. 27, 2011) confirms that restitution "requires both that money or property have been lost by [the] plaintiff, on the one hand, and that it have been acquired by [the] defendant on the other." *Id.* at *15. Where "the economic injury . . involves a loss by plaintiff without any corresponding gain by defendant" there is an "absence of any basis for restitution." *Id.*

The court also agrees with ATTM that the MCC does not show how plaintiffs are entitled to restitution for excess data plan charges incurred after the unlimited data plan was replaced. Indeed, no plaintiff actually alleges actually incurring excess data charges. For this reason, each plaintiffs' UCL and FAL claims against ATTM are dismissed without prejudice.

### D.    CLRA Affidavit and Notice Requirements

The CLRA requires that "[i]n any action [under the CLRA], concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d). If "a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id.* Accordingly, the CLRA claims are dismissed without prejudice as to all plaintiffs because they did not file the required affidavits. *See In re Sony Grand Wega KDF-E A10/A/20 Series Rear Projections HDTV Television Litig.*, 2010 WL 4892114, *10 (S.D. Cal., Nov. 30, 2010) (dismissing CLRA claim in a consolidated class action complaint because plaintiffs failed to provide the required affidavit).

Under the CLRA, a plaintiff must also provide a company with thirty days notice of the specific alleged CLRA violation by certified registered mail before filing a CLRA claim for damages. Cal. Civ. Code § 1782(a). Federal courts have required "[s]trict adherence to the statute's notice provision . . . to accomplish the [CLRA's] goals of expeditious remediation before litigation." *Laster v. T-Mobile USA, Inc.*, 407 F.Supp. 2d 1181 (S.D. Cal. 2005). In this case, plaintiff Osetek sent a notice of violation solely to Apple, and not to ATTM. MCC ¶ 150. Accordingly, Osetek's CLRA claim is dismissed without prejudice for this reason also.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE MASTER CONSOLIDATED COMPLAINT AND DENYING DEFENDANT'S MOTION TO STRIKE  —No. C-10-02553 RMW
JLR                                             8

### E.   Unjust Enrichment

ATTM contends that none of the plaintiffs can assert a claim for unjust enrichment under the applicable state laws. With respect to plaintiff Hanna, courts have repeatedly held that "there is no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794 (2003). Moreover, plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims. *See*, *e.g.*, *Rosal v. First Federal Bank Ca.*, 671 F. Supp.2d 1111, 1133 (N.D. Cal. 2009); *Crigger v. Fahnestock & Co., Inc.*, 2003 WL 22170607, at *12 (S.D.N.Y. Sept. 8, 2003); *Meeco Mfg. Co., Inc.*, 2007 WL 1051259, at *3 (W.D. Wa. April 4, 2007); *Fox v. F & J Gattozzi Corp.*, 672 N.E. 2d 547, 589 (Mass. App. Ct., 1996). Therefore, plaintiffs' unjust enrichment claim is dismissed with prejudice.

### F.   Weisblatt's Negligent Misrepresentation Claim

Under New York Law, "there is no action for negligent misrepresentation of a promise of future conduct unless there is a special relationship between the parties." *Computech Int'l v. Compaq Computer Corp.*, 2002 WL 21298933, at *5 (S.D.N.Y. Oct. 24, 2002). Moreover, "the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller . . . ." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). Because plaintiffs fail to allege anything other than a typical buyer-seller relationship with ATTM, Weisblatt's negligent misrepresentation claim against ATTM is dismissed without prejudice.

### G.   Motion to Strike

ATTM also moves the court to strike plaintiff Osetek's claims against it. According to ATTM, plaintiff Osetek made an omission that she has no claims against ATTM. In her opposition to relate cases, Osetek noted that the "representations, transactions and events that concern ATTM . . . have no bearing on [her] claims for relief," and that her action "does not involve ATTM." Dkt. No. 48 at 2, 3. Nothing in this statement constitutes a waiver of claims against ATTM. The mere fact that Osetek first chose to limit her claims to defendant Apple does not bar Osetek from now asserting claims against ATTM.

Moreover, Osetek was not required to obtain leave from the court before adding claims against ATTM in the MCC. The MCC is superseding document. In the stipulation to allow the

MCC, the parties agreed that "the Weisblatt, Logan, and Osetek actions arise from the same circumstances and allegations, and involve common questions of law and fact." Dkt. No. 66 at 2. ATTM was certainly on notice that Osetek could bring claims against it. In any event, ATTM has not demonstrated any prejudice that would justify striking Osetek's claims. Accordingly, ATTM's motion to strike is denied.

### III. ORDER

For the foregoing reasons, the court denies ATTM's motion to strike. The court grants the motion to dismiss as follows:

1. Claims 4, 5, and 6 are dismissed without prejudice.
2. Claim 7 is dismissed with prejudice.

Plaintiffs are given twenty days leave to amend.

DATED: 7/18/2011

RONALD M. WHYTE
United States District Judge