E-FILED on   7/19/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re Apple and AT&T iPad Unlimited Data Plan Litigation<br><br>ALL CONSOLIDATED ACTIONS | No. C-10-02553 RMW<br><br>ORDER GRANTING AT&T MOBILITY'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS EXCEPT AS TO PLAINTIFF HANNA<br>**[Re Docket No. 93]** |

Defendant AT&T Mobility LLC ("ATTM") moves to compel arbitration and stay proceedings against ATTM pending arbitration.  On July 15, 2011, the court held a hearing to consider defendant's motion.  Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court grants ATTM's motion to compel arbitration and stay claims except as to plaintiff Joe Hanna.

### I. BACKGROUND

Plaintiffs Adam Weisblatt ("Weisblatt"), Joe Hanna ("Hanna"), David Turk ("Turk"), Colette Osetek ("Osetek"), Stuart Logan ("Logan"), and Aaron Friedman ("Friedman") (collectively "plaintiffs") allege that defendants ATTM and Apple Inc. ("Apple") perpetrated a classic "bait and

switch" fraud scheme in connection with the sale of 3G capable iPads[1] for which ATTM was the exclusive 3G service provider. Master Consolidated Complaint ("MCC") ¶ 1. Plaintiffs allege that ATTM and Apple discontinued an unlimited data plan for iPads and that, although existing subscribers could keep the plan indefinitely, subscribers lost the ability to cancel and restart the plan whenever they wanted. MCC ¶¶ 42-44. The facts of this case are set forth in the court's order on ATTM's first motion to compel arbitration. *See* Dkt. No. 50. In that order, the court limited discovery to written discovery relevant to claims against Apple pending the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) (No. 09-893). In light of the Supreme's Court's recent ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011), ATTM again moves to compel arbitration of all claims against it.

**A.     Arbitration Agreement**

During the alleged class period, customers who wished to activate 3G wireless data on the iPad were required to purchase a service plan from ATTM, the then exclusive 3G provider for the iPad. First, the customer followed several screens on the iPad and entered requested information at each step. Decl. of Kimberly D. Eubank, Dkt. No. 25 at ¶ 4. Before the customer could complete the activation process, the terms of ATTM's Session Based Wireless Data Services Agreement (the "iPad Agreement") were displayed for the customer in a scrollable text box with buttons labeled "Agree" and "Back" at the bottom. *Id.* To activate the wireless data service on the iPad, the customer was required to click the "Agree" button. *Id.* The iPad Agreement includes, among other things, an arbitration agreement:

> **3.2     Arbitration Agreement**
> (1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
> • claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
> • claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

---

[1] The iPad is a mobile computing and multimedia device with a touch screen interface manufactured by defendant Apple. It comes in a WiFi only model or a WiFi plus 3G data capable model.

1   •  claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
2   •  claims that may arise after the termination of this Agreement

3 *Id.* Ex. 2 at 8.  Moreover, the arbitration agreement expressly prohibits class actions: "**You agree**
4 **that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by**
5 **jury or to participate in a class action**."  *Id.*  The iPad Agreement also specifies that the "law of
6 the state of [the customer's] address shall govern this Agreement except to the extent that such law is
7 preempted by or inconsistent with applicable federal law." *Id.* Ex. 2 at 15.

8   **B.**  **Parties**

9   The plaintiffs are all ATTM customers: Logan, Hanna, and Friedman live in California,
10 Weisblatt lives in New York, Turk lives in Washington, and Osetek lives in Massachusetts.  MCC ¶¶
11 11-14; Complaint, *Friedman v. Apple Inc.*, No. 11-01875 RMW, Dkt. No. 1, ¶ 27 ("*Friedman*
12 Compl."); Complaint, *Logan v. Apple Inc.*, No. 10-02588 RMW, Dkt. No. 1, ¶ 13 ("*Logan* Compl.").
13 Plaintiffs allege–and ATTM's records confirm–that Logan, Friedman, Weisblatt, and Osetek each
14 purchased and activated a 3G-compatible iPad on ATTM's network between April and November
15 2010.  MCC ¶¶ 55, 57; *Friedman* Compl. ¶ 27; *Logan* Compl. ¶¶ 52-53.  Turk bought three iPad
16 3Gs–two on April 30 and one on May 18, 2010.  Dkt. No. 25 at ¶ 7, Exh. 4.  Turk activated the iPad
17 3Gs on ATTM's network on April 30, May 4, and June 20, 2010, respectively.  *Id.*  Plaintiff Hanna
18 purchased an iPad 3G, but never activated 3G service.  MCC ¶¶ 61-64.  Although Hanna never
19 accepted the terms of ATTM's iPad Agreement, Hanna accepted the same arbitration agreement and
20 choice of law provision when he used ATTM's website to purchase an iPhone 3GS on June 11,
21 2009.  Decl. of Caroline Mahone-Gonzalez, Dkt. No. 26 ¶ 4, Ex. 1.

22   Defendant ATTM now moves to compel arbitration and to stay all claims against it.

23             **II. ANALYSIS**

24   **A.**  **Choice of Law**

25   Plaintiffs contend that the enforceability of the arbitration agreements of Weisblatt, Turk,
26 and Osetek (residents of New York, Washington, and Massachusetts, respectively) should be
27 governed by California law.  According to plaintiffs, their claims arise out of conduct emanating
28

from California.  However, both parties agree that "it ultimately makes little difference what states' laws are applied." Dkt. No. 101 at 2; Dkt. No. 100 at 9.

To determine the enforceability of "contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992).  Restatement (Second) of Conflicts of Law § 187(2) provides in part:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

The parties do not dispute that the first exception cannot be met. Dkt. No. 42 at 11. However, the parties dispute whether the second exception—whether application of another state's law in the present case would be contrary to a fundamental policy of the State of California—is met. If there is a fundamental conflict with California law, "the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Nedlloyd*, 3 Cal. 4th at 466 (internal citation and quotation marks omitted).  If so, the choice of law provision is not enforced. *Id.*; *see also Estate of Darulis*, 401 F.3d 1060, 1062 (9th Cir. 2005); *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 919-20 (Cal. 2001).

Here, California does not have a "materially greater" interest than New York, Massachusetts, or Washington in having its law applied to plaintiffs.  Plaintiffs point to California's interest in protecting its citizens from fraud taking place in California.  But Weisblatt, Turk, and Osetek are not California citizens, and their claims concern representations made by a Georgia based company (ATTM) in New York, Massachusetts, and Washington.  Indeed, "California has no greater interest in protecting other state's consumers than other states have in protecting California's." *Discover Bank v. Superior Ct.*, 134 Cal. App. 4th 886, 895 (2005) (*Discover Bank II*).  It is not enough that California is home to at least one plaintiff and defendant Apple, nor is it relevant that a number of

claims in this suit are brought pursuant to California law. Under the choice of law agreement and pursuant to Restatement principles, plaintiffs' claims should be governed by the law of their home states. In any event, both parties admit that it ultimately makes little difference which states' laws are applied.

### B. Arbitration Agreements of California Plaintiffs Friedman and Logan

In *Concepcion*, the Supreme Court explained that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 131 S. Ct. at 1748. The Supreme Court also held that the policy concerns underlying "California's *Discover Bank* rule" are beside the point, because "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. However, plaintiffs argue that Cal. Civ. Code § 1668 still precludes enforcement of ATTM's arbitration agreement despite the Supreme Court's negative treatment of *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005).

Plaintiffs' argument that Cal. Civ. Code § 1668 continues to preclude enforcement of ATTM's class action waiver is unconvincing. Cal. Civ. Code § 1668 is the source of the *Discover Bank* rule that was explicitly rejected by the Supreme Court. *See Concepcion*, 131 S. Ct. at 1746 (quoting *Discover Bank* (in turn quoting Cal. Civ. Code § 1668 )). Plaintiffs' contention that their modest claims "simply do not provide sufficient motivation for an aggrieved customer to seek redress" on an individual basis (Opp. at 10) is the very argument that was struck down in *Concepcion*. Other courts have reached similar conclusions. *See Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712, at \*2 (N.D. Cal. May 16, 2011) (noting that the Court in *Concepcion* rejected the argument that an arbitration agreement is void solely because small claims might be prohibitively expensive to pursue on an individual basis); *Zarandi v. Alliance Data Sys. Corp.*, 2011 WL 1827228, at \*3 (C.D. Cal. May 9, 2011) (same); *Bellows v. Midland Credit Mgmt., Inc.*, 2011 WL 1691323, at \*3 (S.C. Cal. May 4, 2011) (same). Whether brought under *Discover Bank* or § 1668, the argument that ATTM's arbitration provision is unenforceable solely because it includes a class action waiver is no longer viable.

ORDER GRANTING AT&T MOBILITY'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS EXCEPT AS TO PLAINTIFF HANNA—No. C-10-02553 RMW
JLR                                                                 5

Plaintiffs fail to identify any terms of ATTM's arbitration agreement that might preclude enforcement after *Concepcion*. As the Supreme Court recognized, the terms of ATTM's arbitration provision are "sufficient to provide incentive for the individual prosecution of meritorious claims that are not immediately settled" and "essentially guarantee[]" that aggrieved customers are made whole. *Concepcion*, 131 S. Ct. at 1753 (quoting *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 855-56 (9th Cir. 2009)). ATTM's arbitration provision in no way limits plaintiffs' recover of attorneys' fees and costs if state law authorizes it. In addition, if the arbitrator awards them more than ATTM's last settlement offer, plaintiffs are entitled to double attorney's fees. *Concepcion*, 131 S. Ct. at 1744. Plaintiffs argue that despite *Concepcion,* their claims for public injunctive relief under the CLRA or UCL are still exempt from arbitration. *See Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1079-80 (1999) and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303, 316 (2003). But *Concepcion* would seem to preempt California's arbitration exemption for claims requesting public injunctive relief. *See Arellano*, 2011 WL 184712.

> The recent *Concepcion* decision compels preemption: "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. *Concepcion*, 131 S. Ct. at *6. In sum, the Act preempts California's exemption of claims for public injunctive relief from arbitration, at least for actions in federal court.

*Id.* at *2. Accordingly, the arbitration agreements for plaintiffs Friedman and Logan must be enforced.

**C.     Arbitration Agreements of Plaintiffs Weisblatt, Turk, and Osetek**

Plaintiffs argue that Weisblatt's arbitration agreement is unconscionable under New York Law. Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made . . . ." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791 (1988). Even before *Concepcion*, the Ninth Circuit has held that "class action waiver provision[s] . . . aren't substantively unconscionable under New York law." *Douglas v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1068 (9th Cir. 2007). *See also Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009 ("Courts applying New York law . . . have *uniformly* held that class action

waivers are not unconscionable."). Accordingly, plaintiff Weisblatt's unconscionability argument fails.

Similarly, plaintiff Turk's arbitration agreement is not unconscionable under Washington law. After *Concepcion*, plaintiff Turk's argument that provisions of his arbitration agreement "effectively establishes barriers to bringing small claims in arbitration, thereby exempting [ATTM] from liability" is untenable. Indeed, the leading case in Washington on the enforceability of provisions that require individual arbitration borrowed heavily from *Discover Bank*. *See Scott v. Cingular Wireless*, P.3d 1000, 1006-08 (Wash. 2007) (en banc). Because *Concepcion* overruled *Discover Bank*, it also overruled decisions based on *Discover Bank*.

Still further, plaintiff Osetek's arbitration agreement is not unconscionable under Massachusetts law. Plaintiffs recognize that Massachusetts law requires a showing that the contract provision at issue is both procedurally and substantively unconscionable. As explained with respect to the other plaintiffs, Osetek's substantive unconscionability arguments are preempted by the FAA.

### D. Hanna's Agreement With ATTM

Unlike the other plaintiffs, plaintiff Hanna never accepted the iPad Agreement. Still, ATTM argues that Hanna is bound by the arbitration agreement he accepted when purchasing his iPhone 3GS on June 11, 2009. Dkt. No. 26 ¶ 4, Ex. 1. Both the iPhone arbitration agreement and the iPad arbitration agreement contain the same terms. Dkt. No. 24 Ex. 1.

Plaintiffs contend that Hanna's purchase of a different service (a data plan for an iPhone rather than the iPad) at a different time (before the iPad was even introduced for sale) and in a different manner (through AT&T's website rather than through the iPad) does not indicate that plaintiff Hanna agreed to ATTM's Terms of Service in connection with his iPad.

The Supreme Court has held that:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. Such a presumption is particularly applicable where the clause . . . provides for arbitration of any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder. In such cases, in the absence of any express provision excluding a particular grievance

> from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

*AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (citations and quotations omitted). But the scope of an arbitration clause is not unlimited. Rather, the court "must ascertain and implement the reasonable expectations of the parties . . . ." *Spear, Leeds & Kellogg v. Central Life Assur. Co.*, 85 F.3d 21, 28 (2d Cir. 1996). "Despite the presumption of arbitrability, the strong federal policy favoring arbitration may not extend the reach of arbitration beyond the intended scope of the clause providing for it." *Id.* (citation omitted).

      The scope of Hanna's iPhone arbitration agreement is not as broad as ATTM contends. Nowhere does Hanna's iPhone arbitration agreement refer to devices other than the iPhone. While the iPhone arbitration agreement does explicitly require arbitration of all disputes and all claims between the parties, it does not specifically provide for the arbitration of any differences in interpretation arising with respect to the scope of the arbitration clause itself. ATTM contends that where an "arbitration clause . . . cover[s] 'all disputes that may arise' between the parties, then any dispute over any matter, whether or not it relates to a side agreement, would unquestionably be arbitrable." *See Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1080 (9th Cir. 2002). But *Inlandboatmens*, as well as the other precedent cited by ATTM, involve arbitration provisions contained in collective bargaining agreements ("CBAs"). Here, to extend Hanna's agreement to all disputes, whether or not related to the iPhone, would unreasonably extend arbitration to unintended areas. The iPad and iPhone, and their respective service plans, are distinct products and services. *See* Dkt. No. 100-1 Exh. A, 36 data plan FAQs ("Can I use my current iPhone service plan with the iPad? No. The cellular plan for iPhone is separate from the iPad plan."). Certainly a reasonable consumer would not contemplate that an arbitration agreement regarding the iPhone would bind him to arbitrate a dispute with respect to a future, unreleased device. At bottom, it can not reasonably be that both parties intended for the iPhone 3GS arbitration clause to extend to all future Apple products that utilize ATTM's data network.

ORDER GRANTING AT&T MOBILITY'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS EXCEPT AS TO PLAINTIFF HANNA—No. C-10-02553 RMW
JLR      8

Accordingly, ATTM's motion to compel arbitration with respect to plaintiff Hanna is denied. Hanna's claims regarding his iPad do not fall within the scope of his iPhone 3GS arbitration agreement.

### D. Plaintiffs' Request for Arbitration Discovery

For the reasons already discussed, arbitration related discovery is unnecessary. The argument that plaintiffs seek to support through arbitration related discovery has already been addressed and rejected by the Supreme Court in *Concepcion*.

### III. ORDER

The motion to compel arbitration is granted in part and denied in part. As required by the Federal Arbitration Act, 9 U.S.C. § 2, plaintiffs Adam Weisblatt, David Turk, Colette Osetek, Stuart Logan, and Aaron Friedman shall pursue their claims against defendant ATTM in accordance with their arbitration agreement. Their claims against ATTM are hereby stayed pending the outcome of arbitration. The motion to compel arbitration and stay claims with respect to Joe Hanna is denied.

DATED:     7/19/2011

RONALD M. WHYTE
United States District Judge