E-FILED on    6/26/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re<br><br>Apple and AT&T iPad Unlimited Data Plan Litigation | No. C-10-02553 RMW<br><br>ORDER DENYING DEFENDANT AT&T MOBILITY LLC'S MOTION TO STRIKE<br><br>**[Re Docket No. 119]** |

Defendant AT&T Mobility LLC ("ATTM") moves to strike class allegations from the First Amended Master Consolidated Complaint ("FAMCC") or, in the alternative, to deny class certification under Rule 23, and to strike the request for injunctive relief for individuals outside the putative Non-Subscriber Class. Plaintiff opposes the motion. On October 28, 2011, the court held a hearing to consider ATTM's motion. Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court denies ATTM's motion to strike.

## I.  BACKGROUND

Plaintiffs allege that defendants ATTM and Apple Inc. ("Apple") perpetrated a classic "bait and switch" fraud scheme in connection with the sale of 3G-capable iPads for which ATTM was the exclusive 3G service provider. FAMCC ¶ 1. Plaintiffs allege that ATTM and Apple initially promoted the availability of a flexible, unlimited 3G data plan for the iPad but then announced just weeks after the iPad's release that they would discontinue providing the unlimited data plan. *Id.*

¶¶ 2-3. Plaintiffs allege that defendants' representations about the availability of a flexible, unlimited data plan were false because they had no intention of providing customers with such a plan. *Id.* ¶ 43. Plaintiffs further allege that defendants concealed that information from consumers. *Id.* As a result of defendants' misrepresentations, plaintiffs allege, defendants induced customers to purchase iPads with 3G capability, which cost $130 more than equivalent iPads without 3G capability. *Id.* ¶¶ 4, 41. Additional details of plaintiffs' allegations are set forth in the court's previous orders. *See* Dkt. Nos. 50, 107.

Plaintiffs brought this action seeking to assert claims on behalf of themselves and all others similarly situated against Apple and ATTM. On July 19, 2011, the court ordered plaintiffs Adam Weisblatt, David Turk, Collette Osetek, Stuart Logan, and Aaron Friedman to arbitrate their claims against ATTM and stayed those claims pending the outcome of arbitration. Dkt. No. 107. The court denied ATTM's motion to compel arbitration with respect to plaintiff Joe Hanna ("Hanna"), who has never signed up for any data plan for his 3G-capable iPad. *Id.* Hanna explains that when he purchased his iPad, he planned to sign up for the unlimited data plan in certain months when he was away from home or WiFi access. FAMCC ¶ 68. He has not signed up for a 3G data plan so far because he has generally been in a place with WiFi access. *Id.*

In the First Amended Master Consolidated Complaint, Hanna seeks to assert claims against ATTM on behalf of himself and a proposed "AT&T Non-Subscriber Class," defined as follows:

> All persons in the United States who purchased or ordered an Apple iPad with 3G capability between January 27, 2010 and June 7, 2010 but who did not sign up for or purchase an AT&T data plan at any time.

*Id.* ¶ 92.[1] All plaintiffs seek to bring claims against Apple on behalf of themselves and a proposed "Apple Class," defined as all U.S. purchasers of 3G iPads in the same time period. *Id.* ¶ 91. In addition to damages, plaintiffs seek injunctive relief, including "[a]n Order mandating that

---

[1] ATTM repeatedly asserts that Hanna only seeks to represent a class of individuals who purchased a 3G-capable iPad "because of" the availability of the flexible, unlimited data plan. However, this language appears not in the definition of the AT&T Non-Subscriber Class but in the allegations concerning Hanna: "Though these facts are specific to Mr. Hanna, the allegations against AT&T and Apple pertain to those similarly-situated Class Members who purchased the 3G-enabled iPad because of the option of a flexible, unlimited data plan, and chose not to purchase an AT&T plan when that option was taken away from them." FAMCC ¶ 68. Although plaintiff does not directly challenge ATTM's characterization of the proposed class, the court takes the complaint's definition at face value and will not infer an additional "because of" requirement.

Defendants restore to Plaintiffs and Apple Class and the AT&T Non-Subscriber Class Members the flexible, unlimited data plan Defendants promised and advertised, for such period as the Court deems reasonable." FAMCC at 34.

## II. ANALYSIS

### A. Class Allegations

ATTM moves to strike class allegations in the FAMCC pursuant to Rule 12(f) or, in the alternative, for an order denying class certification under Rule 23. ATTM argues that (1) Hanna cannot satisfy the commonality requirement, (2) certification is improper under Rule 23(b)(3) because individualized issues predominate, (3) certification is improper under Rule 23(b)(2) because monetary damages are not "incidental" to Hanna's claim for injunctive relief, and (4) certification of a nationwide class is improper. Plaintiff responds that ATTM's motion is premature, as there has been no discovery in the case, and such early determinations of class issues are rare and disfavored. Plaintiff argues that, at the pleading stage, his allegations are sufficient to make a prima facie showing of Rule 23's requirements and he should be afforded an opportunity to take discovery.

### 1. Applicable Legal Standards

The function of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (citation omitted). The grounds for a motion to strike must appear on the face of the pleading under attack or from matters of which the court may take judicial notice. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* § 9:403 (2011). The court must treat as admitted all material factual allegations and view the pleading in the light most favorable to the pleader. *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981); Schwarzer, Tashima & Wagstaffe, *supra*, § 9:406. Before a motion to strike can be granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed. *Sanders*, 672 F. Supp. 2d at 990.

Regarding class certification, the Supreme Court has observed that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly

1 encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to
2 probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw.*
3 *v. Falcon*, 457 U.S. 147, 160 (1982). Where the complaint demonstrates that a class action cannot
4 be maintained on the facts alleged, courts have granted motions to strike class allegations. *See*
5 *Sanders*, 672 F. Supp. 2d at 990-91 (granting motion to strike with leave to amend to define a
6 narrower class); *Hovsepian v. Apple, Inc.*, 2009 WL 5069144 at *6 (N.D. Cal. 2009). However,
7 motions to strike class allegations are disfavored because a motion for class certification is a more
8 appropriate vehicle for arguments pertaining to class allegations. *Thorpe v. Abbott Labs., Inc.*, 534
9 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Kazemi v. Payless Shoesource Inc.*, 2010 WL 963225 at
10 *2 (N.D. Cal. 2010).

11 Rule 23(c)(1)(A) provides that the court must determine whether to certify a class action
12 "[a]t an early practicable time." The court may consider the issue on a defendant's motion to deny
13 certification as well as on a plaintiff's motion seeking certification. *Vinole v. Countrywide Home*
14 *Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009). "District courts have broad discretion to control
15 the class certification process," including whether or not to allow discovery. *Id.* at 942. The Ninth
16 Circuit has stated that "[a]lthough a party seeking class certification is not always entitled to
17 discovery on the class certification issue, . . . the propriety of a class action cannot be determined in
18 some cases without discovery, and . . . the better and more advisable practice for a District Court to
19 follow is to afford the litigants an opportunity to present evidence as to whether a class action was
20 maintainable." *Id.* (internal quotations and citations omitted). However, "the plaintiff bears the
21 burden of advancing a prima facie showing that the class action requirements of Fed.R.Civ.P. 23 are
22 satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a
23 showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Mantolete v.*
24 *Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

25       **2.**     **Commonality**

26 ATTM argues that, under the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v.*
27 *Dukes*, 131 S. Ct. 2541 (2011), plaintiff cannot satisfy the commonality requirement of Rule
28 23(a)(2). In *Wal-Mart*, the Court reversed the certification of an employment class action because

the plaintiffs failed to meet the commonality requirement. The Court explained that commonality means more than raising common questions or asserting a violation of the same provision of law. *Wal-Mart*, 131 S. Ct. at 2551. Rather, the claims of the class "must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In the employment discrimination context, the Court found that the "crucial question" to be answered is "why was I disfavored." *Id.* at 2552. The Court reversed certification because the plaintiffs had failed to show there was a uniform policy of discrimination in promotion and pay and therefore had not established the existence of any common questions. *Id.* at 2553-57. ATTM argues the central question in this case is whether each class member purchased a 3G-capable iPad "because of" the availability of the unlimited data plan, a necessarily individualized inquiry, and thus the commonality requirement is not met. Plaintiff responds that there are numerous common questions including: the falsity of the representations made to the class, ATTM's knowledge that the unlimited data plan would be cancelled almost immediately, whether the misrepresented or concealed information was material to a reasonable consumer, and whether class members paid an inflated price as a result of ATTM's conduct.

Unlike an employment discrimination claim, for which the Supreme Court was able to identify a single crucial question, fraud-based claims consist of multiple elements—such as falsity, materiality, intent, reliance, damages—that are each central to the validity of the claim. ATTM focuses on the Supreme Court's language that class members must have "suffered the same injury," but that appears to simply be a reformulation of the typicality and commonality requirements. *See Falcon*, 457 U.S. at 157-58 (noting conceptual gap between an individual discrimination claim and "the existence of a class of persons *who have suffered the same injury* as that individual, *such that* the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims" (emphasis added)). The "same injury" language does not appear to require that the common question go to a specific element, such as causation or damages, nor create a separate element that must be identified and common to the class.

ORDER DENYING DEFENDANT AT&T MOBILITY LLC'S MOTION TO STRIKE —No. C-10-02553 RMW
LJP                                                       5

Indeed, the Supreme Court in *Wal-Mart* reaffirmed that to satisfy Rule 23(a)(2) "even a single common question will do." 131 S. Ct. at 2556 (internal quotations and modifications omitted); *see also Johnson v. Gen. Mills, Inc.*, 2011 WL 4056208 at *2 (C.D. Cal. 2011) ("*Wal-Mart* does not mandate that every element of a cause of action must be common."). Here, plaintiff has identified common questions that are as central to his claims as whether class members bought a 3G-capable iPad "because of" the unlimited data plan. Thus, commonality is established even if reliance or causation cannot be resolved "in one stroke." *See Johnson*, 2011 WL 4056208 at *2.

### 3. Predominance of Common Questions Under Rule 23(b)(3)

ATTM argues that a class cannot be certified under Rule 23(b)(3) because individual issues will predominate. Whereas commonality simply requires that there be some common questions of law or fact, Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." ATTM argues that certification of fraud claims is improper where the class includes those who may never have been exposed to the allegedly false statements or when there are multiple reasons a consumer might buy a product, implying that materiality would vary from consumer to consumer.[2] ATTM further argues that, because the representations were not uniform and materiality would vary, plaintiff is not entitled to a class-wide presumption of reliance.

#### a. Exposure

ATTM argues that the class definition includes those who were never exposed to the alleged misrepresentation, so that individual discovery would be required as to each class member. However, plaintiff has alleged that "Defendants have intentionally made numerous material misrepresentations of fact *to Plaintiffs and all members of . . . the AT&T Non-Subscriber Class* concerning the benefits of purchasing an iPad with 3G capability and the nature of customers' unlimited 3G data plan options." FAMCC ¶ 101 (emphasis added). Plaintiff also alleges various examples of the misrepresentations made by defendants including on their websites and in Apple

---

[2] ATTM also argues that, for the CLRA claim, individualized inquiry would be required to determine whether a class member is a "consumer" who purchased the iPad for "personal, family, or household purposes" under Cal. Civ. Code § 1761(d). However, it is not clear to the court at this stage whether such an inquiry would be so involved that common questions cannot predominate.

1  stores. FAMCC ¶¶ 35, 37-38, 58. At the pleading stage, the court finds plaintiff's allegations
2  sufficient to support a prima facie showing that Rule 23 is satisfied.

3  ATTM argues that plaintiff's pleadings establish that the alleged misrepresentations
4  materially differ because some were oral and some were written, citing *Knapp v. AT&T Wireless*
5  *Services, Inc.*, 195 Cal. App. 4th 932, 943 (2011) ("The face of the complaint itself reveals that
6  AWS's alleged misrepresentations were not uniformly made to proposed class members. The
7  complaint acknowledges some misrepresentations were oral and others were made in various written
8  materials."). However, *Knapp* does not hold that this difference, standing alone, will always defeat
9  class certification. Rather, the *Knapp* court affirmed the denial of class certification based on a
10 detailed evidentiary record, which showed that the defendant marketed its service plans through
11 multiple channels, retailers had their own sales processes and documents to provide to customers,
12 and prospective customers could sign up for service in a variety of ways. *Id.* at 943-44. Thus, "the
13 proposed class . . . would include subscribers who solely spoke with a representative on the
14 telephone, those who only considered certain advertisements, and those who only viewed AWS's
15 Web site and began their service online," and "an individual inquiry would be required to determine
16 whether the representations received by each proposed class member constituted misrepresentations,
17 omissions, or nondisclosures." *Id.* at 944.

18 Here, plaintiff has alleged that the key misrepresentation – that purchasers of a 3G-capable
19 iPad could later upgrade to the unlimited data plan and switch in and out of the plan – was made on
20 a consistent basis by defendants to the entire class. If plaintiff can prove his allegations,
21 individualized inquiry may not be required to determine what particular channel a purchaser used to
22 acquire his iPad or whether he was exposed to a misrepresentation, omission, or nondisclosure.
23 Thus, plaintiff should be given an opportunity to take discovery and present evidence on the issue of
24 what representations were made and where.

25                                       **b.**        **Materiality**

26 ATTM argues that an individualized inquiry would also be necessary to determine
27 materiality of the alleged misrepresentations. ATTM argues that, because different data plans were
28 available, there is no basis to assume that the availability of the unlimited data plan in particular

ORDER DENYING DEFENDANT AT&T MOBILITY LLC'S MOTION TO STRIKE —No. C-10-02553 RMW
LJP                                                                                7

would have been material to all class members. Plaintiff responds that, because class members purchased a 3G-capable iPad, at a premium of $130 compared to the non-3G version, it can be presumed that class members found the 3G capability and the corresponding 3G data plans to be material.

Under California law, a misrepresentation is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010). Materiality is thus an objective standard that may be subject to common proof. *See U.S. v. Watkins*, 278 F.3d 961, 967-68 (9th Cir. 2002); *Brazil v. Dell Inc.*, 2010 WL 5387831 at *5 (N.D. Cal. 2010). Here, the class is sufficiently narrow to suggest that misrepresentations or omissions about the unlimited data plan's availability would always be material. Although some consumers may ultimately have concluded they were only interested in the limited data plan, plaintiff should at least be given an opportunity to present evidence that there is a common answer to the question of whether, at the point of deciding to purchase a 3G-capable iPad, *any* reasonable class member would have attached importance to the availability of a flexible unlimited data plan. Notably, the unlimited data plan was one of only two 3G data plan options available for the iPad during the class period. FAMCC ¶ 30. The court cannot rule out the possibility that a reasonable person would have considered the entire range of data plan offerings, particularly for a product he had never used before. The fact that the class members have never signed up for any data plan does not imply, as ATTM argues, that they would never need an unlimited data plan. Plaintiff alleges that one of the features of the plan was its flexibility, i.e., the ability to turn the plan on and off as needed. Plaintiff has also given examples of how one's needs could change between no data plan at all and an unlimited data plan, including travel to a place without WiFi access. *See* FAMCC ¶¶ 40, 67-68.

The cases cited by ATTM in which individualized questions of materiality or reliance were found to predominate are inapposite. In *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665-66 (9th Cir. 2004), the court found that alleged misrepresentations and omissions about the odds of winning at electronic slot machines may not have mattered to some gamblers, including those who engaged in gambling as entertainment or social activity without regard to the odds of winning, those who

knew nothing about the odds of winning such that they would not have been misled, and those who were fully aware of how the machines operated such that they were not deceived. In *Sanders*, the proposed class included all owners of a certain iMac personal computer, including individuals who did not purchase their iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages. 672 F. Supp. 2d at 991. In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011), the court found that, although the defendant's website was "materially deficient" as to consumers who did not know they were being signed up for a paid rewards program, the class was too broad because it also included those who knowingly signed up for the program and were not misled by the website.

In *Poulos*, the court found that the subject matter of the alleged misrepresentation may not have mattered at all to certain class members because there are many reasons one chooses to gamble that do not depend on the odds of winning. A similar concern may have motivated the court in *Sanders*, as there are many reasons for buying a particular personal computer unrelated to misrepresentations about the quality of the display. Here, however, the court has the benefit of the "controlled experiment" wherein Apple sold iPads that allegedly differed only with respect to 3G capability. *See* FAMCC ¶ 25-26. As discussed above, that strengthens the inference that the availability of the unlimited data plan was material. Although there is still the matter of multiple data plans being available, the court finds that the universe of possible motivations is sufficiently narrowed so that, at the pleadings stage, the court cannot conclude that materiality would require individualized inquiry.

*Poulos*, *Sanders*, and *Ticketmaster* also raise the issue of whether the class includes individuals who knew the truth and therefore were not deceived by the alleged misrepresentations. Here, the truth of whether ATTM and Apple intended to continue offering the unlimited data plan was information uniquely available to defendants, and there is no indication that any class members were aware of the truth before they purchased their iPads. ATTM asserts that it reserved the right to change its data plans at any time, but this statement appeared in a service agreement that was presented to customers activating their iPads for wireless data service. *See* Dkt. No. 25 ¶¶ 4-5, Exh. 2. By definition, no class member ever activated his iPad. Moreover, there is no evidence at this

stage that such information was available to consumers before they purchased an iPad. Thus, plaintiff has sufficiently alleged that materiality may be subject to common proof.

### c. Reliance

ATTM argues that an individualized inquiry would be necessary to determine reliance because plaintiff is not entitled to a presumption of reliance. An inference of reliance arises where material misrepresentations have been made to the entire class. *Ticketmaster*, 655 F.3d at 1022 (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). As discussed above, the court finds plaintiff has sufficiently alleged that all class members were exposed to a material misrepresentation. If plaintiff can show that the issues of exposure and materiality are subject to common proof, individualized inquiry as to reliance may not be necessary.

ATTM argues that, under *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1094 (1993), the defendant must have made identical representations to each class member. However, while *Mirkin* reaffirms that "actual reliance can be proved on a class-wide basis when each class member has read or heard the same misrepresentations," it says nothing to *limit* application of the inference of reliance to cases involving identical misrepresentations. *Id.* at 1094-95. Later, in *Tobacco II*, the California supreme court held that "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements," 46 Cal. 4th at 328, which suggests that some degree of variation or imprecision with respect to specific statements is allowed. *See also In re First Alliance Mortg. Co.*, 471 F.3d 977, 990-92 (9th Cir. 2006) (rejecting argument that fraudulent system must "consist of a specifically-worded false statement repeated to each and every borrower of the plaintiff class," noting "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims"). Whether the multiple representations allegedly made by defendants in this case are sufficiently similar is a factual question the court cannot resolve at this stage.

ATTM also argues that a presumption of reliance does not apply here because the case involves both affirmative misrepresentations and omissions. However, that line of cases addresses

the presumption of reliance in securities fraud cases, which the Ninth Circuit has held should be confined to cases that primarily allege omissions. *See Poulos*, 379 F.3d at 666; *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). The inference of reliance at issue in this case is a matter of California law and applies to both affirmative misrepresentations and omissions. *Ticketmaster*, 655 F.3d at 1022 (discussing causation analysis under CLRA); *see also Mirkin*, 5 Cal. 4th at 1093 (finding "the body of law that has developed under Rule 10b-5 is not sufficiently analogous to the law of fraud to justify its importation into the latter").

### 4. Predominance of Injunctive Relief Under Rule 23(b)(2)

ATTM argues that certification under Rule 23(b)(2) is improper because the suit seeks primarily monetary, not injunctive, relief. Plaintiff responds that his claims under California's Unfair Competition Law and False Advertising Law seek only injunctive relief against ATTM. Citing *Aho v. AmeriCredit Financial Services, Inc.*, 2011 WL 3047677 (S.D. Cal. 2011), plaintiff argues those claims may be "carved out" and certified under Rule 23(b)(2). In *Aho*, the plaintiff sought injunctive relief and restitution against the defendant for sending deficient debt collection notices. The court found that, under *Wal-Mart*, that restitutionary relief could not be sought under Rule 23(b)(2). *Aho*, 2011 WL 3047677 at *7. However, the court adopted the plaintiff's proposal to create a subclass of those who had made payments and thus were entitled to seek restitution. *Id.* The court ultimately denied certification of the subclass because the plaintiff had failed to present any evidence regarding numerosity of the subclass, but the court certified the broader class, which was "entitled to pursue all forms of requested relief, with the exception of restitution of any amounts paid toward a deficiency balance." *Id.* at *12. Thus, *Aho* certified a class under Rule 23(b)(2) by precluding the class from seeking non-injunctive relief.

ATTM argues that the issue under Rule 23(b)(2) is "the primary goal and nature of the litigation," not of specific claims. However, that language comes from *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), in which the court nonetheless held that proceedings could be bifurcated by certifying a Rule 23(b)(2) class for equitable relief and a separate Rule 23(b)(3) class for damages. *Id.* at 620; *see also* Schwarzer, Tashima & Wagstaffe, *supra*, § 10:404 (noting a court may certify a Rule 23(b)(2) class for injunctive relief and a separate class for individual damages or,

if the damage claims do not meet Rule 23(b)(3) standards, certify the Rule 23(b)(2) class alone). Similarly, the Supreme Court specifically considered the plaintiffs' backpay claims, not the litigation as a whole, and found the claims were improperly certified under Rule 23(b)(2). *Wal-Mart*, 131 S. Ct. at 2557-59. Thus, there appears to be no bar to plaintiff seeking certification under Rule 23(b)(2) of a class pursuing only class-wide injunctive relief, regardless of how other claims in this case are treated.

### 5. Propriety of a Nationwide Class

ATTM argues that a class action also cannot be certified because Hanna seeks to represent a nationwide class, requiring application of multiple states' different laws. As a constitutional matter, a nationwide class may proceed under the law of a single state only if the state has "a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [a particular state's] law is not arbitrary or unfair." *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (internal quotations omitted). In addition, under California choice of law principles, the interests of other states may not outweigh California's interest in having its law applied. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921 (2001). The burden of showing significant contacts to California rests on the class action proponent, whereas the burden lies on the one invoking foreign law to show that it, rather than California law, should apply to class claims. *Id.* at 920-21.

Plaintiff argues that California has significant contacts because the claims involve "a common scheme perpetrated in connection with the sale of a California product" and ATTM "is alleged to have conspired with California Defendant Apple, and the agreement between Defendants that formed the basis for the alleged misconduct was negotiated here." Dkt. No. 122 at 17-18. Although the FAMCC is less explicit, it alleges that both defendants' representations, claims, and statements emanated from California and ATTM's "negotiations and contracts with Apple took place and arose, wholly or in large part, with a California corporation." FAMCC ¶ 10. At the pleading stage, this appears sufficient to support the application of California law to a nationwide class. *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 241-42 (2001) (certifying nationwide class where misrepresentations were prepared in and distributed from California and change in policy was

made at Apple's headquarters in California); *Sound Appraisal v. Wells Fargo Bank, N.A.*, 717 F. Supp. 2d 940, 945 (N.D. Cal. 2010) (applying California law to non-California company where plaintiffs alleged it conspired with a defendant headquartered in California, the conspiracy was planned and implemented in California, and wrongful acts emanated from the other defendant's California offices).

      ATTM argues that the court should apply the law of each putative class member's home state. ATTM points out that the court has already dismissed the California statutory claims asserted by non-California plaintiffs and applied New York law to plaintiff Weisblatt. However, the court's previous analysis applied to plaintiffs who had executed agreements with ATTM that contained a choice-of-law provision. *See* Dkt. No. 106 at 7; Dkt. No. 107 at 4-5. "California has two different analyses for selecting which law should be applied in an action," depending on whether "the parties have an agreement that another jurisdiction's law will govern their disputes." *Wash. Mut. Bank*, 24 Cal. 4th at 914-15. Where there is no previous agreement between the parties, as with the putative class, there is a lower bar for applying California law. Moreover, ATTM has not met its burden to show that the relevant laws differ materially between states and the other states' interests would be "more impaired" if their laws were not applied. *See id.* at 919-20. The court agrees with ATTM that the need to engage in 50 different choice-of-law analyses could in itself render a class action unmanageable, particularly because a comparative impairment analysis requires considering "the history and current status of the states' laws and the function and purpose of those laws," *id.* at 920 (internal quotations omitted). However, there are too many preliminary questions that cannot be resolved at this stage of the case, including whether California actually has significant contacts with the claims against ATTM, the strength of the interests those contacts create, and how many states' laws are implicated and how many are materially different from California law. Thus, at this early stage, the court cannot conclude that a nationwide class would be improper.

      **B.**    **Prayer for Injunctive Relief**

      ATTM moves to strike plaintiffs' prayer for an order requiring it to restore the unlimited data plan to both the Apple Class and the Non-Subscriber Class. ATTM argues the request is an improper attempt to circumvent the court's order compelling arbitration. Plaintiffs respond that

"Plaintiff Hanna only seeks injunctive relief from AT&T on behalf of the Non-Subscriber Class, although all Plaintiffs in this litigation continue to seek injunctive relief from Apple on behalf of the larger class." Dkt. No. 122 at 19 n.11. Plaintiffs' prayer for relief is not entirely clear, as it recites an order requiring "Defendants" to restore the unlimited data plan "to Plaintiffs and Apple Class and the AT&T Non-Subscriber Class Members." FAMCC at 34. In light of plaintiffs' representation that Hanna is seeking relief from ATTM only on behalf of the Non-Subscriber Class, the court understands the prayer to mean that plaintiffs seek an order requiring ATTM to restore the unlimited data plan to the Non-Subscriber Class and requiring Apple to restore the unlimited data plan to the Apple Class. That does not conflict with the court's order compelling arbitration of the other plaintiffs' claims against ATTM. Thus, the motion to strike the prayer for relief is denied.

### III. ORDER

For the foregoing reasons, the court denies ATTM's motion to strike. ATTM's motion in the alternative to deny class certification is denied without prejudice.

A case management conference is hereby set for July 13, 2012 at 10:30 a.m. The parties are to file an agreed-upon discovery plan or any revised proposals by July 6, 2012.

DATED: June 26, 2012

RONALD M. WHYTE
United States District Judge