1   Michael W. Sobol (State Bar No. 194857)
    Roger N. Heller (State Bar No. 215348)
2   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA 94111-3339
    Telephone:  (415) 956-1000
4   Facsimile:   (415) 956-1008

5   [additional counsel listed on signature page]

6   *Attorneys for Plaintiffs and Interim Class Counsel*

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12  In Re Apple and AT&T iPad Unlimited      Case No. 5:10-cv-02553 RMW
    Data Plan Litigation
                                             **PLAINTIFFS' NOTICE OF MOTION AND**
13                                           **MOTION FOR ORDER GRANTING**
                                             **PRELIMINARY APPROVAL OF**
    ALL CONSOLIDATED ACTIONS                 **PROPOSED CLASS ACTION**
14                                           **SETTLEMENTS AND FOR RELATED**
                                             **RELIEF; MEMORANDUM OF POINTS**
15                                           **AND AUTHORITIES**

16                                           Date:          September 26, 2013
                                             Time:          2:00 p.m.
17                                           Judge:         Hon. Ronald M. Whyte

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 26, 2013, at 2:00 p.m., in the Courtroom of the Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California, Plaintiffs Adam Weisblatt, Joe Hanna, David Turk, Colette Osetek and Aaron Friedman ("Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for the entry of Orders:[1]

(a) preliminary approving a proposed Stipulation of Settlement entered into between Plaintiffs, on behalf of themselves and others similarly situated, and defendant Apple Inc. (the "Apple Settlement");[2]

(b) preliminarily approving a proposed Stipulation of Settlement entered into between Plaintiff Joe Hanna, on behalf of himself and others similarly situated, and defendant AT&T Mobility LLC (the "ATTM Settlement");[3]

(c) certifying, for settlement purposes, the proposed Settlement Class, as defined in the Apple Settlement, and certifying, for settlement purposes, the proposed ATTM Non-Subscriber Settlement Class, as defined in the ATTM Settlement;

(d) appointing Lieff Cabraser Heimann & Bernstein LLP (Michael W. Sobol and Roger N. Heller), The Weston Firm (Gregory S. Weston and Jack Fitzgerald), Schubert Jonckheer & Kolbe LLP (Willem F. Jonckheer), Casey, Gerry, Schenk, Francavilla, Blatt & Penfield LLP (Gayle M. Blatt), and Hiden, Rott & Oertle, LLP (Michael Ian Rott and Eric Overholt) as Class Counsel representing the Settlement Class in connection with the Apple Settlement; and appointing Lieff Cabraser Heimann & Bernstein LLP (Michael W. Sobol and Roger N. Heller) as Class Counsel representing the ATTM Non-Subscriber Settlement Class in connection with the ATTM

---

[1] In advance of the preliminary approval hearing, the parties will file proposed preliminary approval orders that include a proposed schedule for final approval.

[2] The Apple Settlement is attached as Exhibit A to the Declaration of Roger N. Heller, filed herewith ("Heller Decl.").

[3] The ATTM Settlement is attached as Exhibit B to the Heller Decl.

1   Settlement;

2   (e) appointing Adam Weisblatt, Joe Hanna, David Turk, Colette Osetek and Aaron

3   Friedman as Class Representatives representing the Settlement Class in connection with the

4   Apple Settlement; and appointing Joe Hanna as Class Representative representing the ATTM

5   Non-Subscriber Settlement Class in connection with the ATTM Settlement;

6   (f) approving the parties' proposed forms of notice and notice program, as set forth in the

7   Apple Settlement and ATTM Settlement, and directing that notice be disseminated pursuant to

8   such program;

9   (g) appointing Kurtzman Carson Consultants LLC as Settlement Administrator; and

10   (h) setting a Final Approval Hearing and certain other dates in connection with the final

11   approval of the Apple Settlement and ATTM Settlement.

12   This motion is based on the accompanying memorandum of points and authorities, the

13   Apple Settlement and ATTM Settlement and all exhibits thereto, the declarations of Roger N.

14   Heller ("Heller Decl."), Willem F. Jonckheer ("Jonckheer Decl."), Gregory S. Weston ("Weston

15   Decl."), Gayle M Blatt ("Blatt Decl."), Michael Ian Rott ("Rott Decl."), and Patrick M. Passarella

16   ("Passarella Decl.") filed herewith, the argument of counsel, all papers and records on file in this

17   matter, and such other matters as the Court may consider.

18

19   Dated:  September 12, 2013

20   By:   /s/ *Roger N. Heller*

21   Michael W. Sobol
    Roger N. Heller

22   **LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
    275 Battery Street, 29th Floor

23   San Francisco, CA  94111-3336
    Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

24

25   *Attorneys for Plaintiffs and Interim Class Counsel*

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND .................................................................................. 3

    A.     Procedural History and the Claims in These Cases .................... 3

    B.     Settlement Negotiations .............................................................. 4

III.   THE PROPOSED SETTLEMENTS AND NOTICE PROGRAM ........ 5

    A.     Provisional Certification of the Settlement Classes .................... 5

    B.     Benefits to the Class Members .................................................... 6

    C.     The Notice Program ..................................................................... 8

        1.     Email and Mailed Notice .................................................. 8

        2.     Published Notice ............................................................... 9

        3.     Settlement Website and Long-Form Notice ...................... 9

    D.     Opt-Out Procedure ..................................................................... 10

    E.     Opportunity to Object ................................................................ 10

    F.     Payment of Attorneys' Fees and Expenses ............................... 10

    G.     Service Awards for Class Representatives ................................. 11

    H.     Mutual Release ........................................................................... 11

IV.    ARGUMENT ...................................................................................... 11

    A.     The Class Action Settlement Approval Process ........................ 11

    B.     Certification of the Proposed Settlement Classes is Appropriate ............ 12

        1.     Rule 23(a) is Satisfied. ................................................... 12

            a.     The Classes are Too Numerous to Permit Joinder. ........... 12

            b.     This Case Presents Common Questions of Law and Fact. ................................................................... 13

            c.     Plaintiffs' Claims are Typical. .......................... 13

            d.     Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class Members. ............................................................ 13

        2.     The Requirements of Rule 23(b)(3) are Satisfied. ......... 14

    C.     Preliminary Approval of the Settlement is Appropriate. ........... 15

        1.     The Settlements Are the Product of Arms-Length Negotiations After a Thorough Investigation by Plaintiffs .......... 15

        2.     The Settlements are Fair, Reasonable, and Adequate Given the Alleged Harm to the Class Members and the Potential Risks of Ongoing Litigation. ........................ 17

**TABLE OF CONTENTS**
**(continued)**

Page

3.     The Recommendation of Experienced Counsel Favors
Approval..................................................................................................... 19

D.     The Proposed Forms of Notice and Notice Program are Appropriate
and Should be Approved.......................................................................... 20

E.     The Court Should Schedule a Fairness Hearing and Corresponding
Dates.......................................................................................................... 21

V.     CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................................ 14

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ................................................................................................. 13

*Browning v. Yahoo! Inc.*,
   2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) ...................................................................... 21

*Chavez v. Netflix, Inc.*,
   162 Cal.App.4th 43 (2008) .................................................................................................... 21

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................ 15, 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .......................................................................................... 15, 16

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................................... 20

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) .............................................................................................. 16

*Farinella v. Paypal, Inc.*,
   611 F.Supp.2d 250 (E.D.N.Y. 2009) .................................................................................... 21

*Frank v. United Airlines, Inc.*,
   216 F.3d 845 (9th Cir. 2000) ................................................................................................. 20

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 13, 14, 15

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................................................... 16

*In re Hieneg Techs., Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 99265 (C.D. Cal. Sep. 25, 2006) .................................................... 12

*In re Juniper Networks Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) .......................................................................................... 13

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) .................................................................................. 15

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982) .......................................................................................... 12, 13

*Knight v. Red Door Salons, Inc.*,
   2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ...................................................... 19

*Linney v. Cellular Alaska Partnership*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................................................ 19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................................................... 14

*Otsuka v. Polo Ralph Lauren Corp.*,
   251 F.R.D. 439 (N.D. Cal. 2008) .......................................................................................... 14

# TABLE OF AUTHORITIES
### (continued)

Page

*Pilkington v. Cardinal Health, Inc.*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................................... 15

*Schemkes v. Presidential Limousine*,
  2011 WL 868182 (D. Nev. Mar. 10, 2011) ..................................................... 21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 14

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ..................................................................... 14

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ............................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ..................................................................................... 13

*Wolin v. Jaguar Land Rover North Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ......................................................................... 15

## STATUTES

Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") ...................................... 3, 4

Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL") ...................................... 3, 4

Cal. Civ. Code 1750 *et seq.* ("CLRA") ...................................................... 3, 4

## RULES

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 17

Fed. R. Civ. P. 12(e) .......................................................................................... 17

Fed. R. Civ. P. 23 .............................................................................................. 20

Fed. R. Civ. P. 23(a) .................................................................................... 12, 14

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 12

Fed. R. Civ. P. 23(a)(2) ..................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 13

Fed. R. Civ. P. 23(b) ......................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ............................................................................... 12, 14

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 20

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 15

## TREATISES

1 Newberg § 3.10 ............................................................................................... 13

4 Newberg § 11.25 ............................................................................................. 15

4 Newberg § 11.41 ............................................................................................. 16

4 Newberg on Class Actions, § 11.22 *et seq.* (4th ed. 2002) ........................... 12

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq* ...... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs and the defendants have reached settlements fully resolving this matter.  By this motion, Plaintiffs respectfully request that the Court grant preliminary approval of two settlement agreements—one with defendant Apple Inc. ("Apple") and the other with defendant AT&T Mobility LLC ("ATTM")—and issue the other related relief requested herein.

Under the Apple Settlement, all class members who submit a valid claim will receive a $40 cash payment from Apple, with no class-wide cap on the overall claims that will be paid. Additionally, under the ATTM Settlement, those class members who are in the ATTM Non-Subscriber Settlement Class[4] and who submit a valid claim will receive access to a 5GB iPad3G data plan from ATTM at a discounted price (a discount of $20 per month) for up to one year.  The claim forms and claim process are straightforward and user-friendly.  Collectively, the settlements address both aspects of the harm alleged in these consolidated cases.

Both settlements are the product of extensive arms-length negotiations between the parties and their experienced counsel, who were well-informed about the legal and factual issues involved.  The Apple Settlement was reached with the assistance of experienced and well-respected mediators, Hon. Daniel Weinstein (Ret.) and Catherine A. Yanni, Esq. of JAMS, and is fair, reasonable, and adequate given the class claims, alleged harm, and the parties' respective litigation risks.  Likewise, the ATTM Settlement is the product of extensive arms-length negotiations between the parties and their experienced counsel, and is fair, reasonable, and adequate, and appropriately tailored to the allegations in these cases concerning customers' access to ATTM data plans.  Both settlements fall well within the "range of reasonableness" applicable at the preliminary approval stage.

Further, the parties' proposed forms of notice and notice program are appropriately

---

[4] On July 19, 2011, the Court granted ATTM's motion to compel arbitration as to each of the named plaintiffs except Joe Hanna, who did not sign up for any ATTM data plan for his iPad3G. Docket No. 107.  Plaintiffs thereafter filed a First Amended Master Consolidated Complaint ("FAMCC"), wherein Mr. Hanna alleged claims on behalf of an "AT&T Non-Subscriber Class," consisting of the subclass of customers who, like Mr. Hanna, have not signed up for any ATTM data plan for their iPad3Gs.  Docket No. 110 at ¶ 92.

1  tailored to give class members the best notice practicable under the circumstances of the

2  pendency of this litigation, the terms of the settlements, Class Counsel's fee application, and class

3  members' opt-out and objection rights.

4       Plaintiffs and their undersigned counsel believe the settlements to be in the best interests

5  of the respective class members and wish to begin the court approval process that is required for

6  all class action settlements.  Plaintiffs respectfully request that the Court review the parties'

7  negotiated settlement agreements—which are attached as Exhibits A and B to the accompanying

8  Heller Decl.—and do the following:

9       (a) grant preliminary approval of the Apple Settlement and ATTM Settlement;

10      (b) certify, for settlement purposes, the Settlement Class, as defined in the Apple

11 Settlement, and the ATTM Non-Subscriber Settlement Class, as defined in the ATTM Settlement;

12      (c) appoint Lieff Cabraser Heimann & Bernstein LLP (Michael W. Sobol and Roger N.

13 Heller), The Weston Firm (Gregory S. Weston and Jack Fitzgerald), Schubert Jonckheer & Kolbe

14 LLP (Willem F. Jonckheer), Casey, Gerry, Schenk, Francavilla, Blatt & Penfield LLP (Gayle M.

15 Blatt), and Hiden, Rott & Oertle, LLP (Michael Ian Rott and Eric Overholt) as Class Counsel

16 representing the Settlement Class in connection with the Apple Settlement, and appoint Lieff

17 Cabraser Heimann & Bernstein LLP (Michael W. Sobol and Roger N. Heller) as Class Counsel

18 representing the ATTM Non-Subscriber Settlement Class in connection with the ATTM

19 Settlement;

20      (d) appoint plaintiffs Adam Weisblatt, Joe Hanna, David Turk, Colette Osetek and Aaron

21 Friedman as Class Representatives representing the Settlement Class in connection with the

22 Apple Settlement; and appoint Joe Hanna as Class Representative representing the ATTM Non-

23 Subscriber Settlement Class in connection with the ATTM Settlement;

24      (e) approve the parties' proposed forms of notice and notice program, as set forth in the

25 Apple Settlement and ATTM Settlement, and direct that notice be disseminated pursuant to such

26 program;

27      (f) appoint Kurtzman Carson Consultants LLC as Settlement Administrator; and

28      (g) set a hearing date and schedule for final approval of the settlements and for

- 2 -

1    consideration of Class Counsel's fee application.

2    **II.      BACKGROUND**

3          **A.      Procedural History and the Claims in These Cases**

4          These four consolidated class actions were filed between June and November 2010.  A

5    Master Consolidated Complaint ("MCC") was filed on December 10, 2010 on behalf of

6    customers who purchased iPads with 3G capability ("iPad3G") during the period when the

7    product was first offered for sale.  Plaintiffs alleged that defendants promoted flexible access to

8    an "unlimited" 3G data plan, and then discontinued the unlimited plan soon after the initial wave

9    of iPad3G purchases.  Plaintiffs alleged that this conduct harmed them and the other proposed

10   class members by: (a) causing them to overpay for their iPad3Gs; and (b) depriving them of

11   promised access to an unlimited data plan.  The MCC included claims for intentional

12   misrepresentation, fraud/false promise, negligent misrepresentation, unjust enrichment, and

13   violations of Cal. Civ. Code 1750 *et seq.* ("CLRA"), Cal. Bus. & Prof. Code § 17200 *et seq.*

14   ("UCL"), and Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL").  *See* Docket No. 65.

15         Prior to the filing of the MCC, ATTM moved to compel arbitration of Plaintiffs' claims

16   and to stay the litigation, which motion Apple joined.  After full briefing and a hearing, on

17   October 18, 2010, the Court denied the motion without prejudice, but ordered that discovery be

18   limited to the claims against Apple pending the Supreme Court's then-anticipated decision in

19   *AT&T Mobility LLC v. Concepcion*.  Docket No. 50.

20         On January 13, 2011, Apple filed its Answer to the MCC, broadly denying Plaintiffs'

21   allegations.  On January 14, 2011, ATTM filed a motion to dismiss the claims alleged in the

22   MCC and a separate motion to strike portions of the MCC.  Both motions were fully briefed, and

23   a hearing was held on March 25, 2011.  On May 11, 2011, prior to the Court's ruling on ATTM's

24   pending motions, ATTM filed a notice of the United States Supreme Court's decision in *AT&T*

25   *Mobility LLC v. Concepcion*.  On June 3, 2011, ATTM filed a renewed motion to compel

26   arbitration and to stay the litigation, which was fully briefed and was heard on July 15, 2011.

27         On July 18, 2011, the Court granted in part and denied in part ATTM's motion to dismiss,

28   and denied ATTM's motion to strike.  The Court dismissed without prejudice Plaintiffs'

California statutory claims under the CLRA, UCL, and FAL, finding, *inter alia,* that the non-California plaintiffs could not bring claims under the California statutes and that Plaintiffs had failed to allege a right to restitution under the UCL and FAL as to ATTM.  The Court also dismissed Plaintiffs' unjust enrichment claims and dismissed Plaintiff Weisblatt's negligent misrepresentation claim under New York law.  Docket No. 106.

On July 19, 2011, the Court granted ATTM's renewed motion to compel arbitration as to all plaintiffs besides Joe Hanna.  As to Mr. Hanna, the Court denied ATTM's motion on the grounds that Mr. Hanna had not signed up for any ATTM data plan for his iPad3G and thus was not subject to ATTM's contractual arbitration provision.  Docket No. 107.

On August 8, 2011, Plaintiffs filed a First Amended Master Consolidated Complaint ("FAMCC"), in which all plaintiffs alleged claims against Apple on behalf of all proposed class members, and Plaintiff Hanna alleged claims against ATTM on behalf of a subclass of customers who, like Mr. Hanna, did not sign up for any ATTM data plan for their iPad3Gs, and are thus not subject to ATTM's arbitration clause under this Court's July 19, 2011 Order.  Docket No. 110.

On September 7, 2011, ATTM filed its Answer to the FAMCC, broadly denying Plaintiffs' allegations.  ATTM concurrently filed a motion to strike the class allegations or, in the alternative, deny class certification under Rule 23.  ATTM argued, among other things, that elements of the claims alleged—such as exposure, injury, and reliance—were not susceptible to class-wide proof, and that individual issues would predominate if the case were tried on a class-wide basis.  ATTM's motion was fully briefed, and a hearing was held on October 28, 2011.

On June 26, 2012, the Court denied ATTM's motion to strike, finding that the FAMCC adequately pled, on a *prima facie* basis, class-wide exposure, and that if "plaintiff can show that the issues of exposure and materiality are subject to common proof, individualized inquiry as to reliance may not be necessary."  The Court denied ATTM's motion to deny certification without prejudice to ATTM's right to later re-assert its arguments. Docket No. 142.

### B.    Settlement Negotiations

Following preliminary communications regarding settlement, Plaintiffs and Apple agreed to mediate the claims against Apple with the Hon. Daniel Weinstein (Ret.) and Catherine A.

Yanni, Esq. of JAMS.  An initial, full-day mediation session was held in June 2011, and a second formal session was held subsequently.  Plaintiffs conducted targeted discovery in connection with the mediations.  In addition, counsel for Plaintiffs and Apple engaged in continued follow-up discussions with the help of Ms. Yanni.  The parties reached an agreement in principle on key deal terms with the assistance of the mediators.  After an agreement in principle was reached between Plaintiffs and Apple on the merits, the parties, with the assistance of the mediators, reached an agreement in principle regarding attorneys' fees for the Apple Settlement.  Counsel for Plaintiffs and Apple thereafter worked on finalizing the settlement and drafting settlement papers. Heller Decl., ¶ 12.

During July 2012, Plaintiff's counsel and counsel for ATTM began preliminary discussions regarding a possible resolution of the claims against ATTM.  Following extensive arms-length negotiations between counsel, which included numerous teleconferences over the course of several months, Plaintiff Hanna and ATTM reached an agreement in principle on key deal terms.  After an agreement in principle was reached between Plaintiff and ATTM on the merits, the parties reached an agreement in principle regarding attorneys' fees and costs for the ATTM Settlement.  Heller Decl., ¶ 13.

During the past months, the parties have worked extensively on finalizing the final terms of the respective settlement agreements, the forms and methods of notice, the claim forms and claim process, and the other settlement papers.  These efforts have included considerable work by all parties and their counsel to coordinate the notice program and claims process among the two settlements.  Heller Decl., ¶ 14.

At all times, the negotiations have been arms-length, adversarial negotiations, and the parties have been represented by experienced, well-qualified counsel.  Heller Decl., ¶¶ 11-14.

## III.    THE PROPOSED SETTLEMENTS AND NOTICE PROGRAM

### A.    Provisional Certification of the Settlement Classes

Plaintiffs seek provisional certification of a Settlement Class, defined in the Apple Settlement as:

> All United States residents who purchased or ordered an Apple iPad with 3G capability (iPad 3G) in the United States on or before June 7, 2010.  The Settlement Class excludes Apple; any entity in which Apple has a controlling interest; Apple's directors, officers, and employees; Apple's legal representatives, successors, and assigns; and wholesalers, resellers, retailers and distributors.

Apple does not oppose certification of the Settlement Class for settlement purposes only.  (Apple Settlement, § I)

Plaintiff Hanna seeks provisional certification of an "ATTM Non-Subscriber Settlement Class," defined in the ATTM Settlement as:

> All persons in the United States who purchased or ordered an Apple iPad 3G on or before June 7, 2010 but who did not sign up for or purchase an ATTM data plan for that iPad 3G at any time.  Excluded from this Class are Apple; ATTM; any entity in which ATTM or Apple has a controlling interest; ATTM and Apple's directors and officers; Apple's employees; and ATTM and Apple's legal representatives, successors, and assigns

ATTM does not oppose certification of the ATTM Non-Subscriber Settlement Class for settlement purposes only.  (ATTM Settlement, § I)  The ATTM Non-Subscriber Settlement Class is essentially a subset of the broader Settlement Class, consisting of customers who, like Mr. Hanna, have not signed up for an ATTM data plan for their iPad3Gs.

### B.    Benefits to the Class Members

#### $40 Cash Benefit From Apple

Under the Apple Settlement, Apple will pay $40, in the form of a check, to all Settlement Class Members who submit a timely and valid claim.  All Settlement Class Members—whether or not they are also in the ATTM Non-Subscriber Settlement Class—are eligible to claim the $40 cash payment from Apple, and there is no class-wide cap on the number of cash benefit claims that will be paid.  (Apple Settlement, § II.A)

#### Data Plan Benefit from ATTM

Additionally, under the ATTM Settlement, those class members who are ATTM Non-Subscriber Settlement Class Members and submit a timely and valid claim will receive a Data Plan Benefit.  The Data Plan Benefit provides claimants with access to a 5GB data plan for their iPads for $30 per month for up to one year, which is a $20 per month benefit (i.e., it represents a

1  $20 per month discount from the regular price that ATTM charges other customers for the 5GB

2  plan).  If ATTM reduces the normal price of the 5GB plan, a $20 per month discount will still be

3  provided for the duration of the benefit.  If a claimant no longer owns the original iPad that they

4  purchased, they can use the benefit for a later-generation iPad, as identified in the claim form.

5  ATTM also agrees that it will not reduce data speeds in order to limit the amount of data used on

6  those iPads subscribed to the Data Plan Benefit.  There is no class-wide cap on the number of

7  Data Plan Benefits that will be provided.  (ATTM Settlement, § II.A)

8       Claims Process

9       Upon preliminary approval of the settlements, notice will be disseminated through

10  multiple means, pursuant to the proposed notice program summarized below, and class members

11  will have 90 days from the "Notice Date" (i.e. from the last date for disseminating notice) to

12  submit claims for the cash benefit from Apple, the Data Plan Benefit from ATTM, or both.

13       The claim forms will be substantially in the forms attached as Exhibits G-J to the Apple

14  Settlement and Exhibits E-G to the ATTM Settlement.  Email notice recipients will be directed to

15  the appropriate claim form[5] via a hyperlink in the notice.  Mailed notice recipients will be

16  provided, in the notice, with the web address for the appropriate claim form.  Both email and

17  mailed notice recipients will receive unique Personal Claim Numbers to facilitate the claims

18  process.  The published notice will direct claimants to the Settlement Website and toll-free

19  number, described below, where they can submit claims electronically and download hard copy

20  claim forms.  All claims may be submitted electronically through the Settlement Website or by

21  mail.  (Apple Settlement, § II.B and Exs. G-J; ATTM Settlement, § II.B and Exs. E-G).  The

22  claim forms will require class members to affirm that the ability to switch in and out of the

23  unlimited data plan was a factor in their decision to purchase an iPad 3G.[6]  (*Ibid.*)

24

25  [5] A "dual" claim form for those class members who are identified, using defendants' customer
records, as potentially being in the ATTM Non-Subscriber Settlement Class; and an "Apple-only"

26  claim form for those class members who are identified, using defendants' customer records, as
not potentially being in the ATTM Non-Subscriber Settlement Class.

27  [6] Those claiming the Data Plan Benefit from ATTM will also be required to affirm that they have
not signed up for an ATTM data plan for the iPad 3G that they purchased on or before June 7,

28  2010 (*i.e.*, that they are in the ATTM Non-Subscriber Settlement Class).

## C.    The Notice Program

The settlements include detailed proposed forms of notice as well as an appropriately-tailored, coordinated notice program to ensure the best notice practicable under the circumstances of the pendency of these consolidated cases, the key terms of the settlements, Class Counsel's fee application, and class members' opt-out and objection rights.  (Apple Settlement, § IV and Exs. A-F; ATTM Settlement, § V and Exs. A-D).

As set forth below, the notice program will be administered with the help of an independent Settlement Administrator,[7] and will consist of several parts.

### 1.    Email and Mailed Notice

Summary notice will be sent to class members via email or U.S. mail.  "Dual" summary notices (*i.e.* regarding both settlements) will be sent to those class members who are identified, through defendants' customer records, as being potentially within the ATTM Non-Subscriber Settlement Class.  "Apple-only" summary notices (*i.e.*, regarding the Apple Settlement only) will be sent to those class members who are identified, through defendants' customer records, as not being potentially within the ATTM Non-Subscriber Settlement Class.

To that end, Apple will provide the Settlement Administrator with known, reasonably available email and street addresses, serial numbers, and International Mobile Equipment Identity ("IMEI") numbers for the class members based upon its customer records regarding those iPad 3G purchases and orders falling within the Settlement Class definition.[8]  Apple will also transmit the IMEI numbers to ATTM, which will determine, to the extent feasible, which class members are potentially within the ATTM Non-Subscriber Settlement Class, resulting in the creation of a Dual Notice List and Apple Notice List, which the Settlement Administrator will use to disseminate summary notice.

The Settlement Administrator will email and mail the summary notices on or before the

---

[7] The parties request that the Court appoint Kurtzman Carson Consultants LLC as the Settlement Administrator.  *See* Passarella Decl., filed herewith (summarizing relevant experience).

[8] Of the approximately 674,000 iPad3G purchases and orders falling within the Settlement Class definition that Apple identified from its records, Apple reports that it has email addresses, mailing addresses, or both for approximately 615,000 of them.

1    Notice Date set by the Court at preliminary approval.  For those class members for whom email

2    addresses are available, the summary notice will be sent via email.  For other class members, the

3    summary notice will be sent, in the form of a postcard, via first class U.S. mail.[9]

4         For all mailed summary notices, mailing addresses will be updated through the National

5    Change of Address database before mailing.  For class members for whom emailed summary

6    notice is returned undeliverable, and for whom a mailing address is available, the appropriate

7    (*i.e.*, dual or Apple-only) summary notice will be sent to the class member via U.S. mail.  For all

8    mailed summary notices that are returned with forwarding address information, the appropriate

9    summary notice will be re-mailed once to the new address indicated.  (Apple Settlement, § IV.A,

10   C-F and Exs. B-C, E-F; ATTM Settlement, § V.A, C-F and Exs. B-C)

11            **2.    Published Notice**

12        On or before the Notice Date set by the Court at preliminary approval, Apple and ATTM

13   will cause notice (substantially in the form attached as Ex. D to the Apple Settlement and Ex. D

14   to the ATTM Settlement) to be published once in *Macworld* and once on a different date in *USA*

15   *Today*.  (Apple Settlement, § IV.G; ATTM Settlement, § IV.G)

16            **3.    Settlement Website and Long-Form Notice**

17        On or before the first date that notice is mailed, emailed, or published, the Settlement

18   Administrator will establish a Settlement Website and toll-free telephone number.  Claims may be

19   submitted electronically through the Settlement Website.  Moreover, the Settlement Website will

20   contain the long-form notice (Apple Settlement, Ex. A; ATTM Settlement, Ex. A); a

21   downloadable claim form; copies of the FAMCC and both settlements; Frequently-Asked

22   Questions; and the toll-free number.  Class Counsel's fee application will be available on the

23   Settlement Website when it is filed.  Class members may call the toll-free telephone number to

24

_____

25   [9] For those class members for whom an email address is included in the Apple Notice List, the
     Apple-only summary notice will be sent via email.  For those class members for whom an email
26   address is not included, and a mailing address is included, in the Apple Notice List, the Apple-
     only summary notice will be sent via U.S. mail.  For those class members for whom an email
27   address is included in the Dual Notice List, the dual summary notice will be sent via email.  For
     those class members for whom an email address is not included, and a mailing address is
28   included, in the Dual Notice List, the dual summary notice will be sent via U.S. mail.

1   request copies of the long-form notice or a hard-copy claim form.  (Apple Settlement, § IV.B;

2   ATTM Settlement, § V.B)

3       **D.    Opt-Out Procedure**

4       Any person within the Settlement Class definition may request to be excluded from the

5   Settlement Class by sending a written request, clearly stating their desire to be excluded, to the

6   Settlement Administrator by the deadline proscribed by the notice.  Likewise, any person within

7   the ATTM Non-Subscriber Settlement Class definition may request to be excluded from the

8   ATTM Non-Subscriber Settlement Class by sending a written request, clearly stating their desire

9   to be excluded, to the Settlement Administrator by the deadline proscribed by the notice.[10]

10  (Apple Settlement, § IV.K; ATTM Settlement, § V.K)

11      **E.    Opportunity to Object**

12      Class members who do not timely and validly request exclusion may object to the Apple

13  Settlement, the ATTM Settlement (if they are within the ATTM Non-Subscriber Settlement

14  Class), Class Counsel's fee application, and/or the request for class representative service awards.

15  To be considered, an objection must be sent to the Clerk of the Court and the Settlement

16  Administrator, at the addresses indicated in the long-form notice, must be postmarked by the

17  deadline proscribed by the notice,[11] and must include the following information: the objector's

18  name, address, and telephone number; the objector's signature; a statement that the objector is a

19  member of the Settlement Class and/or ATTM Non-Subscriber Settlement Class, and an

20  explanation of the basis upon which they claim to be a member; all grounds for the objection; and

21  the identity of any counsel who represent the objector.  (Apple Settlement, § IV.L; ATTM

22  Settlement, § V.L)

23      **F.    Payment of Attorneys' Fees and Expenses**

24      In connection with the Apple Settlement, Class Counsel may request, and Apple will not

25  oppose, an award of reasonable attorneys' fees and costs in an amount up to $1.5 million.  For the

26  _____

[10] The parties propose that the deadline to send opt-out requests be 45 days after the Notice Date set by the Court at preliminary approval.

27

[11] The parties propose that the deadline to send objections be 45 days after the Notice Date set by the Court at preliminary approval.

28

PLTFS' NOTICE OF MOTION AND MOTION FOR
ORDER RE: PRELIM. APPROVAL OF SETTLEMENT
CASE NO. 5:10-CV-02553 RMW

ATTM Settlement, Class Counsel may request, and ATTM will not oppose, an award of reasonable attorneys' fees and costs in an amount up to $250,000.[12]  Any payments of Class Counsel's attorneys' fees and costs will be made by defendants, and will be separate from and in addition to benefits provided to class members pursuant to the claims process.  Class Counsel will file their fee application in advance of the objection deadline.  A copy of Class Counsel's fee application will be available on the Settlement Website when it is filed.  (Apple Settlement, § V.A-D; ATTM Settlement, § VI.A-D)

### G.    Service Awards for Class Representatives

Class Counsel will petition the Court for service awards for the five class representatives, in an amount up to $1,000 each, to compensate them for their commitment on behalf of the class members in these cases.  Apple agrees that it will not oppose such request.  Any service awards granted by the Court will be paid by Apple, and will be separate from and in addition to benefits provided to class members pursuant to the claims process.  (Apple Settlement, § V.E)

### H.    Mutual Release

In exchange for the benefits provided by Apple pursuant to the Apple Settlement, Plaintiffs and Settlement Class Members will release Apple and related entities from any claims they may have related to the issues in these cases.  (Apple Settlement, Defn. I, J; § VI.B).  In exchange for the benefits provided by ATTM pursuant to the ATTM Settlement, Plaintiff Hanna and ATTM Non-Subscriber Settlement Class Members will release ATTM and related entities from any claims they may have related to the issues in these cases.  (ATTM Settlement, Defn. P,Q; § VII.B).

## IV.    ARGUMENT

### A.    The Class Action Settlement Approval Process

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for approval of class action settlements:

---

[12] Class Counsel's fee and cost application, and the amounts that will be requested therein, will appropriately account for Class Counsel's commitments of time and resources in prosecuting these actions, the results achieved for the class members, the risks that Class Counsel assumed in taking on these cases, the complexity of the issues involved, and applicable law.

(1)     Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.

(2)     Dissemination of notice of the proposed settlement to the affected class members.

(3)     A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), §§ 21.63 *et seq*.  This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11.22 *et seq*. (4th ed. 2002) ("Newberg").

With this motion, Plaintiffs respectfully request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlements; appoint a Settlement Administrator; direct that notice be disseminated to class members pursuant to the proposed notice program; and issue the related relief requested herein.

**B.     Certification of the Proposed Settlement Classes is Appropriate**

Certification of the Settlement Class and ATTM Non-Subscriber Settlement Class for settlement purposes is appropriate because Rule 23(a) and Rule 23(b)(3) are satisfied.

**1.     Rule 23(a) is Satisfied.**

**a.     The Classes are Too Numerous to Permit Joinder.**

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While there is no fixed rule, a class with at least 40 members is generally sufficiently large.  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).  Here, there are hundreds of thousands of customers in the proposed Settlement Class.  Moreover, while the exact size of the ATTM Non-Subscriber Settlement Class is not currently known, it almost certainly includes at least thousands of customers.  *In re Hienerg Techs., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 99265, *7 (C.D. Cal. Sep. 25, 2006) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity

- 12 -

1  requirement is satisfied.") (citation omitted).

2          **b.**     **This Case Presents Common Questions of Law and Fact.**

3        Rule 23(a)(2) requires that there be one or more questions common to the class.  *See*

4  *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998); 1 Newberg § 3.10; *see also Wal-*

5  *Mart Stores, Inc*. *v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  The claims against defendants raise

6  common questions, including whether the representations at issue were material and whether a

7  reasonable consumer would have relied upon such representations in making purchase decisions.

8  *See* Docket No. 142.

9          **c.**     **Plaintiffs' Claims are Typical.**

10        Rule 23(a)(3) requires that "the claims and defenses of the representative parties are

11  typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality does not

12  require total identity between representative plaintiffs and class members.  *Armstrong v. Davis*,

13  275 F.3d 849, 869 (9th Cir. 2001).  Rather, typicality is satisfied so long as the named plaintiff's

14  claims stem "from the same event, practice, or course of conduct that forms the basis of the class

15  claims, and is based upon the same legal theory."  *Jordan*, 669 F.2d at 1322; *In re Juniper*

16  *Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009) ("representative claims are 'typical' if

17  they are reasonably co-extensive with those of absent class members") (citation omitted).

18        Here, the named Plaintiffs' claims stem from the same common course of conduct as the

19  claims of the class members.  Plaintiffs and all class members purchased iPad3Gs during the

20  initial period the product was offered for sale, and all of their claims are based on allegations

21  concerning representations about the unlimited data plan and injury flowing therefrom.  The

22  typicality requirement is thus satisfied here.

23          **d.**     **Plaintiffs and Their Counsel Will Fairly and Adequately**

24                  **Protect the Interests of the Class Members.**

25        Rule 23(a)(4) requires that the representative plaintiffs will "fairly and adequately" protect

26  the interests of the class.  The two-prong test for determining adequacy is:  "(1) Do the

27  representative plaintiffs and their counsel have any conflicts of interest with other class

28  members?; and (2) will the representative plaintiffs and their counsel prosecute the action

1    vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003);

2    *Hanlon*, 150 F.3d at 1020.  Both prongs are satisfied here.

3         First, the named Plaintiffs' interests are aligned with, and not antagonistic to, the interests

4    of the class members.  Plaintiffs have the same interest as all class members in obtaining redress.

5    *See Hanlon*, 150 F.3d at 1021 (adequacy satisfied where "each…plaintiff has the same problem").

6         Second, proposed Class Counsel have extensive experience litigating and settling class

7    actions, including consumer cases.  They have demonstrated expertise in handling all aspects of

8    class actions.  *See* Heller Decl., ¶¶ 4-9, Ex.C; Jonckheer Decl., ¶ 2, Ex. A; Weston Decl., ¶¶ 2-4,

9    Ex. 1; Blatt Decl., ¶¶ 3-8; Rott Decl., ¶ 2.  They are well qualified to represent the class members.

10   Moreover, Plaintiffs and their counsel remain fully committed to advancing the interests of, and

11   obtaining relief for, the class members, as evidenced by, *inter alia*, the terms of the proposed

12   settlements.

### 2.        The Requirements of Rule 23(b)(3) are Satisfied.

14        In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

15   be satisfied.  Here, the proposed classes satisfy Rule 23(b)(3), which permits a class action if the

16   Court finds that "questions of law or fact common to class members predominate over any

17   questions affecting only individual members, and that a class action is superior to other available

18   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

19   Common issues predominate here.  That is particularly so given that, if the proposed settlements

20   are approved, there will be no need for a trial, and thus manageability of the classes for trial need

21   not be considered.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

22        Moreover, a class action is superior to other methods of litigation where, as here, class

23   treatment will promote greater efficiency and no realistic alternative exists.  *See Local Joint Exec.*

24   *Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.

25   2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).  Individual

26   prosecution of the claims in these cases is impractical.  *Tait v. BSH Home Appliances Corp.*, 289

27   F.R.D. 466, 486 (C.D. Cal. 2012) ("superiority requirement is met '[w]here recovery on an

28   individual basis would be dwarfed by the cost of litigating on an individual basis.'") (quoting

1    *Wolin v. Jaguar Land Rover North Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)).

2        **C.        Preliminary Approval of the Settlement is Appropriate.**

3        Public policy "strong[ly] . . . favors settlements, particularly where complex class action

4    litigation is concerned." *Pilkington v. Cardinal Health, Inc.*, 516 F.3d 1095, 1101 (9th Cir.

5    2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs*

6    *v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

7        "[T]he decision to approve or reject a settlement is committed to the sound discretion of

8    the trial judge because he is exposed to the litigants and their strategies, positions, and proof."

9    *Hanlon*, 150 F.3d at 1026.  In exercising such discretion, the Court should give "proper deference

10   to the private consensual decision of the parties…[T]he court's intrusion upon what is otherwise a

11   private consensual agreement negotiated between the parties to a lawsuit must be limited to the

12   extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

13   overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

14   whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *see also*

15   Fed. R. Civ. P. 23(e)(2).

16       At the preliminary approval stage, a court need only find that the proposed settlement is

17   within the "range of reasonableness," such that dissemination of notice to the class and the

18   scheduling of a fairness hearing are worthwhile and appropriate.  4 Newberg § 11.25; *see also In*

19   *re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007).

20       The proposed settlements here satisfy the standard for preliminary approval because:

21   (a) they are the product of serious, arms-length negotiations between the parties, reached after a

22   thorough investigation by Plaintiffs' counsel; (b) they provide strong relief that is appropriately

23   tailored to the alleged harm to the class members, and are fair, reasonable, and adequate given the

24   remaining claims and the parties' respective litigation risks; and (c) they were negotiated by, and

25   are recommended by, experienced Class Counsel.

26       **1.        The Settlements Are the Product of Arms-Length Negotiations After a
                      Thorough Investigation by Plaintiffs**

27

28       "Before approving a class action settlement, the district court must reach a reasoned

1  judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion

2  among, the negotiating parties." *City of Seattle*, 955 F.2d at 1290.  Where a settlement is the

3  product of arms-length negotiations conducted by capable and experienced counsel, the court

4  begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 Newberg

5  § 11.41; *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10,

6  2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

7  Both settlements submitted for the Court's consideration are the product of arms-length

8  negotiations between the parties and their well-qualified counsel.  Plaintiffs and Apple engaged in

9  two formal mediation sessions before experienced mediators, Hon. Daniel Weinstein (Ret.) and

10  Catherine A. Yanni, Esq. of JAMS, as well as follow-up settlement conferences and negotiations,

11  and were able to reach an agreement in principle on key deal terms of the Apple Settlement.

12  Counsel for Plaintiffs and ATTM engaged in extensive, arms-length negotiations, resulting in

13  their agreement on key deal terms of the ATTM Settlement.  During the past months, counsel for

14  all parties have been working hard, not only to finalize the terms of the two settlement agreements

15  and the related settlement papers, but also to ensure that the notice program and claims processes

16  for the two settlements are coordinated in a sensible and effective manner.  Heller Decl., ¶ 11-14.

17  Throughout all of these negotiations, the parties were represented by counsel experienced

18  in the prosecution, defense, and settlement of complex class actions, and were guided by the

19  Court's prior rulings in this case.

20  The settlements are informed by Plaintiffs' investigation and analysis of the factual and

21  legal issues in these cases, and follow litigation which has included dispositive motions

22  addressing the viability and certifiability of the claims alleged.  Prior to filing their respective

23  suits, counsel for the Plaintiffs investigated the factual issues involved and the potential legal

24  claims.  Those efforts continued after the initial complaints were filed, including extensive legal

25  research and factual investigation regarding iPad purchase paths, the representations made during

26  the relevant time period, the experiences of the proposed class members, and other important

27  issues.  Heller Decl., ¶ 10.

28  Further, in connection with the mediations with Apple, Class Counsel conducted targeted

1   discovery which allowed them to assess the merits of their claims against defendants as well as

2   potential measures of class damages.  Among other things, Class Counsel reviewed and analyzed

3   contemporaneous internal documents and iPad sales data from in and around the proposed class

4   period.  Heller Decl., ¶ 12.

5        Moreover, as the Court is aware, while Plaintiffs have not yet moved to certify a litigation

6   class, there has been significant litigation in this case, including: two motions to compel

7   arbitration, a Rule 12(b)(6) motion to dismiss, a Rule 12(e) motion to strike, and a motion to

8   strike class allegations and deny class certification.  The settlements submitted herewith are

9   informed by the Court's rulings on these motions.

10   **2.    The Settlements are Fair, Reasonable, and Adequate Given the Alleged Harm to the Class Members and the Potential Risks of Ongoing Litigation.**

11

12       The proposed settlements provide meaningful relief to the class members that is well-

13   tailored to the harm alleged.  Specifically, the Apple Settlement allows *all* class members to

14   submit claims for a cash payment, and provides that Apple will pay all valid claims that are

15   submitted, in the amount of $40 for each claim.  There is no cap on the overall cash benefit claims

16   that will be paid, and thus no Settlement Class Member who submits a valid claim will be denied

17   recovery.

18       Additionally, under the ATTM Settlement, all ATTM Non-Subscriber Settlement Class

19   Members may submit a claim for the Data Plan Benefit.  Again, there is no cap on the overall

20   Data Plan Benefits that will be provided by ATTM.  This additional relief comes on top of, and

21   not in place of, the $40 cash benefit from Apple, which *all* class members may claim.

22       To the extent possible (in light of the Court's July 19, 2011 arbitration Order), the

23   settlements appropriately address both aspects of the alleged harm to class members: (1) that they

24   overpaid for their iPad 3Gs; and (2) that they were denied promised access an expanded data plan.

25       As to the first aspect, the $40 cash benefit from Apple represents approximately 30% of

26   the $130 difference between what class members paid for their iPad3Gs and what they would

27   have paid for an equivalent iPad without 3G capability.  That is a strong result for class members

28   given, among other things, the argument Apple would have put forward that a damages measure

1   should take into account other factors (besides access to an unlimited data plan) that class

2   members would have considered in purchasing an iPad3G.

3        As to the second aspect, the Data Plan Benefit provides those class members who have

4   litigable claims against ATTM with access to an expanded, 5GB iPad data plan, at a rate that is

5   approximately equal to what they would otherwise have to pay for a more basic data plan. This

6   additional relief is appropriately-tailored to address the alleged denial of data plan access here.

7   While admittedly it does not provide these class members with the exact data access that Plaintiff

8   alleges they should have received, it does provide quite substantial relief in that regard.  The

9   ATTM Settlement also ensures that the Data Plan Benefit will be available to claimants even if

10  they no longer own the iPad3G they initially purchased, by allowing such claimants to use the

11  benefit for a later-generation iPad, as identified in their claim form.

12       The claim forms (*see* Apple Settlement, Exs. G-J; ATTM Settlement, Exs. E-G) are

13  simple and straightforward, and the claims process is designed to make claim submission

14  convenient for class members.  Email notice recipients will be directed to the appropriate claim

15  form via a hyperlink in the notice.  Mailed notice recipients will be provided the web address for

16  the appropriate claim form.  Both email and mailed notice recipients will receive unique Personal

17  Claim Numbers to facilitate the claims process.  All claims may be submitted either electronically

18  through the Settlement Website or by mail.

19       Further, the settlements separately provide for the payment of attorneys' fees and costs

20  directly by defendants, subject to Court approval.  Thus, the payment of attorneys' fees and costs

21  will not affect the recovery for class members.

22       The results achieved for the class members pursuant to the settlements are fair, reasonable

23  and adequate, particularly given the potential risks of further litigation for class members.  Both

24  liability and damages remain disputed in these cases, as does the question of whether a class

25  action trial would be manageable.  Both defendants have made it clear that they will continue to

26  vigorously litigate and defend these cases.  Among other arguments and defenses that defendants

27  have asserted and/or indicated that they will assert are: (a) class members' purchase decisions

28  were not motivated by, or exclusively by, the representations about the unlimited data plan; (b)

1    the representations were not material; (c) the representations were truthful and not misleading; (d)

2    Plaintiffs and the class members received the products that they paid for; and (e) Plaintiffs and the

3    class members cannot demonstrate that they have been harmed.

4         While Plaintiffs believe they can overcome these defenses, they are indicative of the risks

5    and hurdles that Plaintiffs and the class members would face should this matter proceed to trial

6    and, if Plaintiffs prevailed at trial, an inevitable appeal.  The proposed settlements allow class

7    members to avoid the risks of unfavorable rulings on these and other issues, while still providing

8    them considerable relief.

9         The settlements also provide the class members with another significant benefit that they

10   could not receive if they proceeded to trial—prompt relief.  Proceeding to trial could add years to

11   the resolution of these cases, given the legal and factual issues raised and likelihood of appeals.

12              **3.       The Recommendation of Experienced Counsel Favors Approval.**

13        In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel

14   should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 U.S.

15   Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009); *see also Linney v. Cellular Alaska*

16   *Partnership*, 1997 WL 450064, at 5 (N.D. Cal. July 18, 1997).  Here, counsel for all parties

17   endorse the settlements as fair, adequate, and reasonable.  *See* Heller Decl., ¶15; Jonckheer Decl.,

18   ¶ 3; Weston Decl., ¶¶ 5-6; Blatt Decl., ¶ 9; Rott Decl., ¶ 3.

19        Class Counsel here have extensive experience litigating and settling consumer class

20   actions and other complex matters.[13]  They have conducted an extensive investigation into the

21   factual and legal issues raised in these cases.  The fact that qualified and well-informed counsel

22   endorse the settlements as being fair, reasonable, and adequate weighs heavily in favor of the

23   Court approving the settlements.  Moreover, the key terms of the Apple Settlement were

24   negotiated with the assistance of capable mediators with considerable experience mediating class

25   actions.

26

27   _____

28   [13] *See* Heller Decl., ¶¶ 4-9, Ex.C; Jonckheer Decl., ¶ 2, Ex.A; Weston Decl., ¶¶ 2-4, Ex.1; Blatt
     Decl., ¶¶ 3-8; Rott Decl., ¶ 2.

**D.     The Proposed Forms of Notice and Notice Program are Appropriate and Should be Approved.**

The proposed forms of notice and coordinated notice program here fully comply with due process and Fed. R. Civ. P. 23.  Rule 23(c)(2)(B) requires:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language:  the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).

In the context of a class settlement, the notice must also include a general description of the proposed settlement.  *See Churchill Village*, 361 F.3d at 575; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  Notice sent to each class member "'who can be identified through reasonable effort'" constitutes reasonable notice.  *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

The proposed forms of notice here include the required information.  *See* Apple Settlement Exs. A-F; ATTM Settlement Exs. A-D.[14]  Moreover, the proposed multi-part notice program—which includes mailed/emailed summary notice, published notice, and a Settlement Website with long-form notice and access to key documents—is appropriately tailored to ensure the best notice practicable under the circumstances.

Apple and ATTM will use their customer records to create an Apple Notice List (for those class members who are identified as not being potentially in the ATTM Non-Subscriber Settlement Class) and Dual Notice List (for those class members who are identified as potentially being within the ATTM Non-Subscriber Settlement Class), and the Settlement Administrator will use the contact information on those lists to disseminate emailed and mailed summary notice.  Those class members for whom email addresses are available will receive summary notice via

---

[14] Additionally, the settlement agreements themselves will be available on the Settlement Website.  (Apple Settlement, § IV.B; ATTM Settlement, § V.B)

1   email; for other class members, summary notice will be mailed.  Courts in this District and

2   elsewhere have repeatedly recognized that email notice is particularly appropriate for populations

3   such as the classes here.  *See, e.g., Browning v. Yahoo! Inc.*, 2006 WL 3826714, * 8 (N.D. Cal.

4   Dec. 27, 2006); *Farinella v. Paypal, Inc.*, 611 F.Supp.2d 250, 256 (E.D.N.Y. 2009); *Chavez v.*

5   *Netflix, Inc.*, 162 Cal.App.4th 43, 48-49, 58 (2008); *see also Schemkes v. Presidential Limousine*,

6   2011 WL 868182, *4-5 (D. Nev. Mar. 10, 2011) (finding email notice appropriate because email

7   addresses typically retained even when a class member changes physical address).

8       Appropriate additional steps will be taken to ensure the best distribution of the summary

9   notice practicable, including mailing summary notice to class members for whom email notice is

10  returned undeliverable,[15] running all mailing addresses through the National Change of Address

11  database to help ensure that the class members' address information is as current as possible, and

12  appropriate measures to address instances where mailed notices are returned with forwarding

13  address information.  Moreover, notice of the settlements will be published in *Macworld*, a

14  national publication focused on Apple products, and in *USA Today*.

15      The Settlement Administrator will also establish a Settlement Website, where class

16  members can access the settlement agreements, the long-form notice, and hard-copy claim forms,

17  and can submit claims for settlement benefits electronically.

18      **E.      The Court Should Schedule a Fairness Hearing and Corresponding Dates.**

19      The last step in the approval process is a Fairness Hearing where the Court may hear all

20  evidence and argument necessary to evaluate whether to grant final approval of the settlements.

21  The parties will submit a proposed final approval schedule in advance of the preliminary approval

22  hearing, and will be prepared to discuss scheduling issues at the hearing.

23  **V.     CONCLUSION**

24      For the foregoing reasons, Plaintiffs respectfully request that the Court do the following:

25      (a) grant preliminary approval of the Apple Settlement and ATTM Settlement;

26      (b) certify, for settlement purposes, the Settlement Class, as defined in the Apple

27  ─────────────
[15] *See Browning*, 2006 WL 3826714 at * 8 (approving notice program where notice sent via email

28  and, where e-mails returned undeliverable, via mail).

1   Settlement, and the ATTM Non-Subscriber Settlement Class, as defined in the ATTM Settlement;

2   (c) appoint Lieff Cabraser Heimann & Bernstein LLP (Michael W. Sobol and Roger N.

3   Heller), The Weston Firm (Gregory S. Weston and Jack Fitzgerald), Schubert Jonckheer & Kolbe

4   LLP (Willem F. Jonckheer), Casey, Gerry, Schenk, Francavilla, Blatt & Penfield LLP (Gayle M.

5   Blatt), and Hiden, Rott & Oertle, LLP (Michael Ian Rott and Eric Overholt) as Class Counsel

6   representing the Settlement Class in connection with the Apple Settlement, and appoint Lieff

7   Cabraser Heimann & Bernstein LLP (Michael W. Sobol and Roger N. Heller) as Class Counsel

8   representing the ATTM Non-Subscriber Settlement Class in connection with the ATTM

9   Settlement;

10   (d) appoint plaintiffs Adam Weisblatt, Joe Hanna, David Turk, Colette Osetek and Aaron

11   Friedman as Class Representatives representing the Settlement Class in connection with the

12   Apple Settlement; and appoint Joe Hanna as Class Representative representing the ATTM Non-

13   Subscriber Settlement Class in connection with the ATTM Settlement;

14   (e) approve the parties' proposed forms of notice and notice program, as set forth in the

15   Apple Settlement and ATTM Settlement, and direct that notice be disseminated pursuant to such

16   program;

17   (f) appoint Kurtzman Carson Consultants LLC as Settlement Administrator; and

18   (g) set a hearing date and schedule for final approval of the settlements and for

19   consideration of Class Counsel's fee application.

20

21

22

23

24

25

26

27

28

- 22 -

1    Dated: September 12, 2013        Respectfully submitted,

2

3                                     By: /s/ *Roger N. Heller*
                                          Roger N. Heller
                                      Michael W. Sobol (State Bar No. 194857)
4                                     Roger N. Heller (State Bar No. 215348)
                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
5                                     275 Battery Street, 29th Floor
                                      San Francisco, CA  94111-3339
6                                     Telephone:  (415) 956-1000
                                      Facsimile:  (415) 956-1008

7
                                      Gregory S. Weston
8                                     Jack Fitzgerald
                                      THE WESTON FIRM
9                                     1405 Morena Blvd, Suite 201
                                      San Diego, CA 92110
10                                    Telephone:     (619) 798-2006
                                      Facsimile:     (480) 247-4553

11
                                      Willem F. Jonckheer
12                                    SHUBERT JONCKHEER & KOLBE LLP
                                      Three Embarcadero Center
13                                    Suite 1650
                                      San Francisco, CA 94111
14                                    Telephone: (415) 788-4220
                                      Facsimile: (415) 788-0161

15
                                      Gayle M. Blatt
16                                    CASEY, GERRY, SCHENK, FRANCAVILLA, BLATT &
                                      PENFIELD LLP
17                                    110 Laurel Street
                                      San Diego, CA 92101
18                                    Telephone: (619) 238-1811
                                      Facsimile: (619) 544-9232

19
                                      Michael Ian Rott
20                                    Eric Overholt
                                      HIDEN, ROTT & OERTLE, LLP
21                                    2635 Camino del Rio South, Suite 306
                                      San Diego, CA 92108
22                                    Telephone: (619) 296-5884
                                      Facsimile: (619) 296-5171

23
                                      *Attorneys for Plaintiffs*
24

25

26

27

28

                                             PLTFS' NOTICE OF MOTION AND MOTION FOR
                                             ORDER RE: PRELIM. APPROVAL OF SETTLEMENT
                                             CASE NO. 5:10-CV-02553 RMW